166   271
101a ¹216

## THE STATE ex rel. FUNKHOUSER v. SPENCER, Judge.
### (No. 10975.)

### In Banc, December 21, 1901.

1. **Election Contest:** EXAMINATION OF BALLOTS: STARE DECISIS. The law in reference to the examination of ballots at any election was settled on the former hearing of this case (164 Mo. 23) and that subject is no longer open for review.

2. ———: EXAMINATION OF BALLOTS NOT QUESTIONED: JURISDICTION. The court has no jurisdiction to order the examination of ballots which are not included in the notice of contest or in anywise contested or questioned therein. To do so would be to expand the issues beyond the pleadings. And where the notice fails to call in question the ballots of certain precincts, the court has no jurisdiction to order an examination of all the ballots cast or counted in the election district.

3. ———: ———: RECOUNT: COMPARISON WITH VOTING LISTS. To determine whether votes cast for the contestant have been counted for the contestee, or whether the votes cast have been properly summed up, a recount of the ballots may be made, but to do that it is not necessary to compare those ballots with the voting lists.

4. ———: PLEADING: CHARGING ALL VOTES TO BE FRAUDULENT: JURISDICTION. Where the contestant, in an election contest, charges that all the votes cast in the election district, those cast for himself as well as those cast for the contestee, including his own vote, are fraudulent, he states himself out of court; for, if the charge is true he was not elected, and has no right to the office, and no right to meddle with the ballots.

5. ———: ———: ———: CORRECTED BY APPEAL: PROHIBITION. And since the law provides for the secrecy of the ballot, it is held that all the voters of the district have an interest in the manner in which their votes are exposed to public view, and that this can be done only in the way prescribed by law, and an attempt to expose them in some other way, or to contest an election except as the statute prescribes, are not such matters as may be corrected by appeal or writ of error, and it clearly appearing that the circuit court has no jurisdiction to hear the contest, this court will prohibit it from proceeding therein, by prohibition.

Prohibition.

RULE MADE ABSOLUTE.

*John H. Overall* for relator.

The order requires the Board of Election Commissioners to open, count, examine and compare with the list of voters all the votes cast for the office of coroner including the votes of the voters in those precincts where the validity of the votes were not in question, and the commissioners are commanded to compare these votes with the voting list, and thus destroy, at least as to them, the secrecy of the ballot, in violation of the provisions of the Constitution preserving the secrecy of the ballot.

*McCoy & Gillespie* for respondents.

Respondents urge that the point of petitioner as to the secrecy of the ballot being destroyed by the orders granted in these cases is not well taken for the reason that the inspection and examination of all the ballots as provided by the Constitution is necessary in order to show whether the names stricken from the list were counted for contestor or not, or had been changed so as to appear that they were voted for contestee, both of which contestant charges in his petition as to the names stricken from the lists.

MARSHALL, J.—This is the second time this controversy has been before this court. The former case is reported in 164 Mo. 23. The law in reference to the examination of ballots cast at any election was settled in that case and the subject is no longer open to review in this State. After that decision the respondent, Spencer, as judge of the circuit court, on July 9, 1901, upon the application of the contestant, Lloyd, made the following order in the contested election case:

"Now at this day, the court having heard and fully considered the petition of the contestor, herein filed for a writ directed to the Board of Election Commissioners of the city of St. Louis, and being now fully advised in the premises, it is ordered by the court that a writ do now issue directed to the Board of Election Commissioners of the city of St. Louis commanding them to open, count, compare with the list of voters and examine the ballots in their office, which were cast at the election held in the city of St. Louis, Missouri, on the sixth day of November, 1900, and to make return and certify under their hand and official seal to this court of such count, comparison and examination, so far as the same relates to the office of coroner of the city of St. Louis, and in so certifying they shall intelligently distinguish between ballots which were counted and those which were rejected; and said order shall further direct the said Board of Election Commissioners to permit the contestor, Henry C. Lloyd, and the contestee, R. M. Funkhouser, and their respective attorneys to fully examine the said ballots, and in making such returns to this court said Board of Election Commissioners shall include all the facts therein which said contestor or said contestee or their attorneys may desire, which may appear from the said ballots affecting or relating to the election for said office."

Thereupon the petitioner applied to one of the judges of this court, in vacation, for a preliminary rule in prohibition, to prevent the respondents from enforcing or carrying out the order aforesaid, showing by his petition, *inter alia*, that the order required the election commissioners to open, count, compare with the list of voters and examine *all* the ballots that were cast at the general election on November 6, 1900, so far as they relate to the office of coroner of the city of St. Louis, while the notice of contest in the election contest case of Lloyd vs. Funkhouser, in which the order complained of was entered, did not call in question or in any manner contest the votes of

Vol 166 mo—18

about three hundred voters registered in and who voted in the 1st, 2d, 3d, 4th, 5th, 6th and 7th precincts of the Fourth ward of said city. The notice of contest contained a copy of the registration lists of the city, showing that about 136,000 persons were registered in that city as voters, and after striking out about three hundred names in the precincts aforesaid, charged that all the remainder of the registered voters of the city had voted illegally, including all those who voted for the contestant as well as those who voted for contestee, and including the name of the contestant himself. Upon this showing a preliminary rule was issued. The return of the respondents admits these facts and seeks to justify the order. The petitioners have demurred to the return.

I.

The decisive question in this case is whether or not the circuit court exceeded its jurisdiction in ordering the election commissioners to open, count, compare with the list of voters and examine the ballots cast by the three hundred voters whose right to vote and whose ballots are not questioned by either the contestant or the contestee, as well as all the ballots that were cast at that election.

When this matter was here before it was distinctly pointed out and decided that the order then before the court, which was the same with respect to these three hundred voters as the order now under consideration, was without authority of law, in that, it was broader than the pleadings in the case, and violated the secrecy of the ballot as to these three hundred voters whose rights were not questioned and whose exercise of their rights was not charged to have been unlawful in any respect. That decision was the law of the case, and should have been obeyed, without question, by the circuit court, without regard to what that court may have thought of it. [May v. Crawford, 150 Mo. l. c. 511; Bealey v. Smith, 158 Mo.

522; Hennessy v. Bavarian Brewing Assn., 145 Mo. 104.] In not so doing and in again making the same order, the circuit court exceeded its jurisdiction.

It is argued, however, that it is necessary to recount all the ballots cast, because the notice of contest charges that ballots were counted for the contestee that were cast for the contestant. It ought to be enough to say that the notice of contest makes no such charge as to the three hundred ballots referred to. But it is said this charge is general and, hence, all the ballots must be recounted to ascertain whether the charge is true or not. Even if this be true, it would not warrant the order under consideration, for a recount of all the ballots cast would show whether the judges and clerks of election had properly counted and credited the ballots to the contestant or contestee. Such a course is always permissible. But this order does not stop here. It goes further and orders all the ballots to be counted, compared with the voting lists and examined. This was not at all necessary to determine whether votes cast for the contestant had been counted for the contestee or whether the votes cast had been properly summed up. A recount of the ballots themselves would answer that question, without comparing them with the voting lists, and without respect to whether they were cast by one person or another. So that the order was not necessary and the court had no power to make the order to properly determine this question.

The respondents contend, further, that frauds were committed at the election and that they did not know and could not know without such a count and comparison of the votes with the poll lists, to what extent the frauds were committed or who committed them, and, therefore, they were obliged to and did charge that all the 136,000 votes (except the three hundred aforesaid) cast at the election were fraudulent. They further contend that as they were entitled to charge that any number of votes were fraudulent they had a right to charge

that all the votes cast were fraudulent, and that a court can not control their right to charge that all or only a part of the votes were fraudulent.    Or otherwise stated, the position taken by the respondents is this:    Frauds were committed at the election; we do not know who committed them or any of them; hence, we have a right to and do charge that all the votes cast were fraudulent, and having so charged, we have a right, under the Constitution and laws of the State, " to go upon a fishing expedition;" to open the ballots, count the ballots, compare the ballots with the voting lists, and to examine the ballots, and to require the election commissioners to certify the result to the circuit court, and in this way we will establish, as far as we can, our charge that every voter in the city of St. Louis voted fraudulently—including the 59,970 persons who voted for the contestant.

This contention has the sole merit of being novel, candid and bold.

It is true, as claimed, that a contestant in a contested election case has a right to charge that any number or all of the votes cast at the election were fraudulent, and that the court can not limit him in this respect.    But it is equally true that if he charge that all the votes cast were fraudulent, he can not complain if he suffers the consequences of so charging.    The consequence of such a charge is that the election is void, and being void it is the same as if no election was held.    This being true it follows that the contestant was not elected, and, therefore, he is not entitled to maintain his contest, much less to have the ballots opened, counted, examined and compared with the voting lists.    Such a petition is bad on its face, states no cause of action, but states the contestant out of court.    And that is the status of this contestant.    He states that all of the 136,000 voters registered in the city voted at the election, and that all of the votes cast were fraudulent, except the three hundred in the Fourth ward, and he does not allege that any of those three hundred votes were cast for him.    Therefore,

he necessarily states that no legal votes were cast for him, and if this is true he was not elected and is not entitled to the office and has no right to meddle with the ballots.   Upon such a showing, the court has no jurisdiction to order the ballots to be opened, counted, compared with the voting lists and examined.   The pleader has stated himself out of court.   So that while a contestant has a right to charge that any number or all of the votes cast at an election were fraudulent, he must take the consequences if his charges are so framed as to show that he was not elected and, hence, is not entitled to maintain his contest.   That is the case here as made by the notice of contest.

But on its face such a pleading is vicious, and shows want of good faith.   It can not be possible that all of the 136,000 registered voters in the city of St. Louis, except the three hundred, voted fraudulently.   Those votes represent every shade of politics, every class of people, every creed.   They included the 59,970 persons who voted for the contestant, and it could not be true that the contestant honestly believed that all the votes cast for himself were fraudulent.   Yet he so charges. The acme of absurdity and the highest evidence of want of good faith are reached, however, in contestant's charge that he himself voted fraudulently.

The statute (sec. 7029, R. S. 1899) relating to contesting the election for any county or municipal election provides that "the notice shall specify the grounds upon which the contestant intends to rely, and if any objection be made to the qualifications of any voters, the names of such voters and the objections shall be stated therein."   This statute affords no authority for such a notice as was served in this case.   The law contemplates good faith, a reasonable observance of the usual and necessary requirements of law that the complaint shall state a cause of action—shall aver facts that if proved would entitle the claimant to the relief asked.   The notice in this case wholly fails to comply with these requirements, but on

the contrary, if true, shows that the contestant has no more right to the office in question than any of the other 135,700 voters, who, like himself, are charged to have voted fraudulently.

It is contended, however, that these are matters that can only be corrected on appeal or writ of error, and are not properly cognizable in a prohibition case. This is true in ordinary cases where no one except the parties litigant is concerned, and where the rights of third persons, not parties to the suit, can not be injuriously affected by anything that is done in the particular case. But it is not true in a contested election case, for the 136,000 voters, whose ballots are sought to be exposed without their consent, have a constitutional right to be protected. They are not proper or necessary parties to the contested election case. But their rights are involved in the order under consideration, and no court has any right, power or jurisdiction to expose how those voters exercised their right of franchise, except in the case and in the manner provided by the people in their sovereign capacity and by the representatives of the people assembled to enact their laws. The people directly or by representation have given their consent to an inspection of the ballots in certain cases and in a certain manner, and no person or court has any right to ask or permit it to be done in any other kind of a case or in any other manner.

A faithful and strict compliance with the law is a necessary prerequisite to the jurisdiction of the court. If any court attempts to exercise jurisdiction in a case or in a manner not authorized by law, it is the duty of this court, under its supervisory jurisdiction over all inferior courts, to prohibit it. In this respect and for these reasons contested election cases are not like ordinary cases. The damage to the voter could not be repaired by correcting such errors of the trial court on appeal or by writ of error. That damage can only be pre-

vented by prohibition, when an inferior court is about to act without jurisdiction or in excess of its jurisdiction.

When this matter was here before it was distinctly pointed out in what manner and how far a court could order an inspection, recount, examination and comparison of ballots in a contested election case. The order in this case is not in consonance with what was then said. Moreover, from what is herein shown this contestant, on this showing, is not entitled to any order of any kind with respect to the ballots, for he has utterly failed to state a cause of action, but on the contrary, by the averments of his notice or petition, shows that he was not legally elected and is not entitled to the office of coroner.

For these reasons the preliminary writ of prohibition heretofore issued is made absolute. *Burgess, C. J., Valliant, Sherwood, Brace* and *Gantt, JJ.,* concur; *Robinson, J.,* dissents.