# THE STATE ex rel. KOCHTITZKY et al. v. RILEY et al.

### In Banc, March 30, 1907.

1. **CIVIL SUIT.** The phrases "civil case" and "civil suit" refer to the legal means or proceedings by which the rights and remedies of private individuals are enforced or protected, in contradistinction to the words "criminal cases," which refer to public wrongs and their punishment.

2. ———: **Change of Venue: Drainage District.** Under the provisions of section 818, Revised Statutes of 1899, providing that "a change of venue may be awarded in any civil suit," landowners, upon a compliance with the statutory requirements, are entitled to a change of venue in a proceeding brought in the circuit court for the formation and incorporation of a drainage district for the reclamation of swamp and overflowed lands. Such a proceeding is a "civil suit" within the meaning of those words.

3. **PROHIBITION: Change of Venue: Error.** If the application for a change of venue is not in conformity to the statutory requirements, or if the proper notice that an application for a change would be made was not given, then error in granting the change of venue may be corrected by an appeal. The court having jurisdiction to grant the change of venue, the Supreme Court will not by writ of prohibition prohibit it from exercising that jurisdiction, however erroneous its action may be. It is not the purpose of the writ of prohibition to correct errors of the trial court.

## Prohibition.

WRIT DENIED.

*Oliver & Oliver* for relators.

(1) The writ of prohibition is of common law origin and is of great antiquity. It was framed to confine courts of special, limited, or inferior jurisdiction within the proper limits of their authority, and to prevent confusion in the administration of justice. 16 Enc. Pl. and Pr., 1093; 2 Bailey on Jurisdiction, sec. 449; Smith v. Whitney, 116 U. S. 167. (2) It issues to an inferior court, when such court exceeds its jurisdiction in a case of which it may take cognizance, no less than when it has no jurisdiction whatever. And it is available to keep a court within the limits of its lawful authority in a particular proceeding, as it is to prevent the exercise of jurisdiction over a cause not given by law to it for consideration. State v. Slover, 126 Mo. 652; State v. Withrow, 133 Mo. 500; 2 Bailey on Jurisdiction, sec. 447; Railroad v. Wear, 135 Mo. 230. (3) If a court attempts to exercise jurisdiction in a case, or in a manner not authorized by law, it is the duty of the Supreme Court, under its supervisory jurisdiction over all inferior courts, to prohibit it. Const., art. 6, sec. 3; Railroad v. Wear, supra; State ex rel. v. Spencer, 166 Mo. 271. (4) The writ is not confined to cases where the lower court has no juris-

diction at all, but extends to cases where the court having jurisdiction of the suit exceeds its legitimate or lawful powers. State v. Slover, 126 Mo. 652; State v. Withrow, 133 Mo. 500; State v. Ellis, 130 Mo. 90. (5) The right to a change of venue is purely statutory and has no existence outside of the special grant of power to award it; and to entitle a party to a change of venue, he must comply with all the substantial requirements of the enabling act. State v. Headricks, 149 Mo. 403; State v. Wofford, 119 Mo. 409; State v. Sanders, 106 Mo. 194; State v. Woodson, 86 Mo. App. 253; Cole v. Cole, 89 Mo. App. 233; Smith v. Railroad, 31 Mo. App. 140. (6) An application which fails to show when the applicant received his information as to the bias or prejudice of the trial judge is insufficient and will be refused. Smith v. Railroad, 31 Mo. App. 140; Ranney v. Railroad, 157 Mo. 477; Railroad v. Holliday, 137 Mo. 440. (7) The statute under which these drainage proceedings are had makes no provision for a change of venue. And the right to a change of venue, as above stated, is purely statutory and does not exist except in those instances where the statute gives it. (a) It has been held that a statute authorizing the removal of a suit, action, issue, petition, presentment or indictment by the judge or judges of any court of the State does not authorize the removal of an equity suit by a change of venue. Cook v. Cook, 41 Md. 362. (b) So a change of venue was denied on a *quo warranto* where this court ordered it to be tried in a specified county. State v. Townsley, 56 Mo. 107. (c) Changes of venue will not lie from one circuit court to another, from the hearing of a petition for the opening of a public road, unless the statute grants the right. Ex parte Williams, 4 Yerg. (Tenn.) 580. (d) The statute authorizing a change of venue from a justice of the peace in a case of assault and battery does not warrant a change of

venue where the proceedings are before the court of criminal correction. State v. Zeppenfeld, 12 Mo. App. 573. (e) In a "suit" pending before the probate court neither party to the "suit" is entitled to a change of venue, and the action of a probate judge in granting a change of venue was condemned by the St. Louis Court of Appeals and held to be without authority of law. Morris v. Lane, 44 Mo. App. 1. (f) There is no general and inherent power in courts to remove a cause pending therein to another court. But that power can only be given by statute, and the statute must be complied with. And it was held in Michigan that while the policy of the State did not favor the action of judges trying cases where they had been of counsel, the jurisdiction of the court was not taken away because of the incapacity of the judge to sit in a given case; and it was held that every case must remain in the court where it originated until removed by lawful authority. Shannon v. Smith, 31 Mich. 451. (8) This is not a "suit"—which is a controversy between a "plaintiff" and a "defendant;" this is an independent and special statutory proceeding authorizing contiguous landowners to incorporate a *quasi* public corporation for a particular purpose. The only resemblance it bears to a suit is the fact that non-petitioning landowners are notified by "summons" or an "order of publication," as in civil cases. Laws 1905, p. 191; L. & S. Co. v. Miller, 170 Mo. 240. (9) An examination of the statute under which these drainage proceedings were instituted will convince any reasonable mind that the statute is complete in itself and that the mode of procedure is exclusive. The construction contended for by respondent is unreasonable, for if the proceedings for the incorporation of a drainage district is a "civil suit" within the meaning of the code, then the proceedings would have to be brought in every county where the lands are situated, as pro-

vided by the statutes.  Section 8253, Laws 1905, page
120, provides that any owner of real estate who has
not signed the "articles of association" may object
to the organization and incorporation of the drainage
district by filing "objections" on or before the first day
of the term of the court.  The statute limits his objec-
tions, however, as follows: 1.  "Why such drainage
district should not be organized and incorporated."
2.  "Why his land or any part thereof will not be
benefited by the proposed drainage."  The objections
thus made, and they are all that he is permitted to
make, shall be heard by the court in a "summary man-
ner, without unnecessary delay," and in case the objec-
tions are overruled, the circuit court shall by its order,
duly entered and recorded, "declare and decree said
drainage district to be a public corporation of this
State."  The real purpose of the statute up to this
state of the proceedings is to secure a decree declaring
the proposed drainage district a corporation.  Land &
Stock Co. v. Miller, 170 Mo. 240.

*John A. Hope* for respondents.

(1)  If the drainage proceeding is anything that
can be entertained at all by the circuit court, it is a civil
suit within the meaning of the change of venue statute.
2 Bouvier's Dict., p. 1065; Hockemeyer v. Thompson,
150 Ind. 176; Bass v. Elliott, 105 Ind. 517; Weston v.
Charleston, 2 Peters (U. S.) 467; Pac. Ry. cases, 115
U. S. 5.  "Civil suit" in the change of venue statute
must mean the same as "civil case" in the section of
the Constitution defining and limiting the jurisdiction
of circuit courts to "criminal cases" and "civil cases;"
therefore, if this drainage matter is not a "civil suit"
relators have no case in the circuit court; on the other
hand, if it is a civil suit, respondents are entitled to a
change of venue.  Sec. 22, art. 6, Const.; sec. 818, R. S.
1899.  A change of venue is authorized, notwithstand-

ing it is a special statutory proceeding, and although there is no provision for change of venue in the special statute regulating the proceeding. Railroad v. Fowler, 113 Mo. 466; Manson v. Coleman, 86 Mo. App. 23; State ex rel. v. Smith, 176 Mo. 97; Nash v. Craig, 134 Mo. 354. (2) "The rulings of the circuit court on the application for a change of venue are reviewable by appeal, writ of error or *certiorari*, either of which remedies is adequate for the alleged errors complained of herein, and having other adequate remedies, relators are not entitled to have the proceedings of the circuit court reviewed, set aside or interfered with by the writ of prohibition." Eudaley v. Railroad, 186 Mo. 399; State ex rel. v. Evans, 184 Mo. 632; High, Extra. Rem. (3 Ed.), sec. 765. The question whether or not the change of venue statute (sec. 818) applies to special statutory proceedings has been pronounced by this court "debatable both on principle and authority." State ex rel. v. Evans, 184 Mo. 642. It will not be denied, we assume, that the action of Judge Riley on the motion for change of venue, whether it was erroneous or not, can be reviewed on appeal, or, if no appeal lies, by *certiorari;* nor can it be disputed that the general rule is that prohibition will not issue when these other remedies exist. The question then is, does the fact that the material prosperity of certain private interests and their plan to enrich themselves at the expense of others will be promoted, justify a departure from the general rule and the issuance of this writ when there are other remedies?

WOODSON, J.—In September, 1905, the relators and other landowners in the counties of Bollinger, Cape Girardeau, Dunklin, New Madrid, Pemiscot, Scott and Stoddard filed in the office of the clerk of the circuit court of New Madrid county "Articles of Association" for the formation and incorporation of a

drainage district for the reclamation of swamp and overflowed lands, located in those counties. The articles of association were drawn in conformity with article 3, chapter 122, of the Revised Statutes of Missouri, 1899, and the amendments thereto, approved April 8, 1905, relating to swamp and overflowed lands; and prayed for an order of said court incorporating the landed territory, described in said articles, into a drainage district, to be known as the Little River Drainage District.

The articles of association and the petition so filed conform to all the requirements of the said statute and act before mentioned, and all the non-petitioning landowners of the district either entered their appearance, were personally served or duly notified by publication, as provided in the statute.

It is alleged in the articles of association and the petition that New Madrid county had within its boundaries a greater portion of the land proposed to be embraced in said drainage district than has any of the other counties mentioned, and for that reason the suit was begun in that county. The summons was returnable the first day of the March term, 1905, of that court.

On the 21st of March, 1906, respondents, Louis and Mary H. G. Houck, filed objections to the incorporation of the said drainage district, which were of great length.

No further order was made by the court at that time, but, by consent of the parties, the hearing of the objections was continued until July 7, 1906.

On said last day respondents, Louis and Mary Houck, filed in said cause an application for a change of venue, which, omitting the caption, is as follows:

"Now come Louis Houck and Mary H. G. Houck, objectors and defendants in the above-entitled cause, and respectfully state that they cannot have a fair

and impartial trial of said cause in the circuit court of New Madrid county, Missouri, for the reason that the opposite parties in said cause, to-wit, plaintiffs and petitioners therein for the incorporation and establishment of said drainage district, have an undue influence over the mind of the Honorable Henry C. Riley, the judge of said court, and for the further reason that said judge is biased and prejudiced against the objectors and defendants and in favor of the said plaintiffs and petitioners in said cause;

"That information and knowledge of said bias and prejudice on the part of said judge and of the said undue influence exercised over his mind came to your petitioners for this change of venue after the last adjournment of this court and after the filing of their objections herein against the incorporation and establishment of said drainage district, and that this application for a change of venue is made as soon as practicable after the filing of said objections.

"Wherefore, the defendants and objectors pray the court to change the venue of said cause and award the same to some other court, where the causes complained of do not exist."

The application was signed by said Louis Houck, and duly sworn to on July 3, 1906.

The relators then filed a motion to strike from the files of the court the respondent's application for a change of venue, and assigned as reasons therefor, among others, the following:

"1. That the filing of said pretended application was improvident and without any statutory authority or right.

"2. That the statute under which these proceedings were instituted for the incorporation of a drainage district makes no provision for a change of venue from the court where the proceedings are instituted, and the right to a change of venue is purely statutory, and does

not exist, except in those instances where the statute authorizes it.

"3.  That the pretended application for a change of venue is insufficient in form, and does not comply with the statute in that it does not state when the alleged information came to the knowledge of Louis Houck.

"4.  That the pretended application was filed without giving notice to the adverse party.

"5.  That the statute, under which these proceedings were instituted, authorizing the incorporation of a drainage district, makes no provision for the granting of a change of venue, but on the contrary provides that the 'objections' shall be heard before the court in a 'summary manner, and without unnecessary delay,' and that this application for a change of venue was manifestly made for the purpose of delay."

The relator's motion to strike out was at once taken up by the court, and after it had been seen and heard was by the court overruled, to which ruling and action of the court the relators duly excepted at the time.

Thereupon, the court took up the application of the respondents, Louis and Mary H. G. Houck, and announced from the bench that said application would be sustained, and the venue in said proceeding (the formation and incorporation of said drainage district), would be changed from New Madrid county to some other county.

To this action of the circuit court the relators objected and excepted at the time.

Thereupon, the relators requested said circuit court to withhold its order and judgment in granting a change of venue and sending said proceedings for the incorporation of a drainage district to some other county until relators could be heard in this court, and ascertain whether or not the respondents, Louis and Mary

H. G. Houck, were entitled to a change of venue under. the statute authorizing a circuit court to incorporate a drainage district. This latter request was by the circuit court granted.

Thereupon, relators instituted this proceeding, in this court, praying for a writ of prohibition, prohibiting the Hon. Henry C. Riley, judge of the New Madrid Circuit Court, from granting said change of venue, and prohibiting Louis and Mary Houck from further prosecuting their said application for a change. This court issued a provisional writ, requiring respondents to show. cause why a permanent writ should not issue. The answer and returns of the respondents substantially admit the facts before stated, and insist:

First. That the action of said judge was within the limits of his lawful jurisdiction, and that he had a right to take up and dispose of said application for a change of venue in the same manner, and in the same way, as though the proceedings for the incorporation and information of a drainage district was a "civil suit" within the meaning of section 818, Revised Statutes 1899.

Second. That if. the respondent judge committed error in holding that a change of venue would lie in a proceeding relating to the formation of a drainage district, it was reviewable on appeal, and that prohibition for that reason would not lie.

Respondents Louis and Mary Houck in their separate return set up many other reasons why they should be discharged, which go to the merits of the case and have no bearing upon the issues presented here, and for that reason they will not be further noticed.

OPINION.

I. There are but two points presented in the case for the court's determination, and they are: whether or not the circuit court of New Madrid county was

exceeding its lawful jurisdiction in holding that the venue in a proceeding for the incorporation of a drainage district could be changed from that county to some other county; and whether or not this court in this character of proceeding can review the assigned errors of the trial court.

We will consider these questions in the order mentioned.

If this proceeding is a civil suit within the meaning of section 818 of the Revised Statutes of Missouri, 1899, regarding changes of venue in civil suits, then the circuit court of New Madrid county was not exceeding its lawful jurisdiction when it announced its purpose to grant the change of venue to some other county in the State, and in that case the provisional writ should be quashed; but if, upon the other hand, such a proceeding as this is not such a suit within the meaning of said section, then said court was at that time transcending its jurisdiction, and the provisional writ should be made permanent.

The respondents contend for the affirmative of this proposition, while the relators maintain the negative thereof. The issue thus joined requires us first to determine what is a "civil suit" within the meaning of the statute.

Mr. Webster says that the word civil means (5), "Relating to rights and remedies sought by action or suit."

Civil remedy (Law), "That given to a person injured by action, as opposed to a criminal prosecution."

Civil suit, "A suit for a private claim or injury."

Bouvier defines the word "civil" in these words: "In contradistinction to criminal to indicate the private rights and remedies of men as members of the community in contrast to those which are public and relate to the government; thus, we speak of civil process and

criminal process, civil jurisdiction and criminal jurisdiction.''

''Civil Action. In Practice.''

''In the Civil Law.'' ''A personal action which is instituted to compel payment, or the doing some other thing which is purely civil.''

''At Common Law.'' ''An action which has for its object the recovery of private or civil rights, or compensation for their infraction.'' [1 Bouvier Law Dict. (Rawle's Revision), p. 329.]

The word ''suit'' in practice means, ''An action.'' ''It is more general than 'action,' which is almost exclusively applied to law and denotes any legal proceeding of a civil kind brought by one person against another.''

'' 'Suit' is a generic term of comprehensive signification, and applies to any proceeding in a court of justice in which the plaintiff pursues, in such court, the remedy which the law affords him for the redress of any injury, or the recovery of a right.'' [2 Bouvier's Law Dict. (Rawle's Revision), p. 1065.]

Mr. Webster defines the word ''case'' to be, ''A state of facts involving a question for discussion or decision; especially a cause or suit in court.''

Bouvier defines the word to mean, ''A question contended before a court of justice. An action or suit at law or in equity.'' [1 Bouvier's Law Dict. (Rawle's Rev.), p. 288.]

Mr. Webster says, 4. (Law), the word ''suit'' means, ''The attempt to gain an end by legal process; an action or process for the recovery of a right or claim; legal application to a court of justice; *prosecution* of right before any tribunal; as a civil *suit;* a criminal *suit;* a *suit* in chancery.''

It will be seen from an examination of these various definitions that the phrases, ''civil case'' and ''civil

suit," refer to the legal means by which the rights and remedies of private individuals are enforced or protected, in contradistinction to the words "criminal cases," which refer to public wrongs and their punishment; and that the word "case," when considered alone, means the facts, or the state of facts which constitute the rights of the individual, or his cause of action, which the *"proceeding," "action"* or *"suit"* protects or enforces.

This court has repeatedly held that in the construction of a statute, "the words of the law are to be taken in their ordinary, usual and natural meaning." [Henry & C. Co. v. Evans, 97 Mo. 55; McFarland v. Railroad, 94 Mo. App. 340.]

. The same rule of construction applies to a constitutional provision.

"The general and primary rule of construction requires that words, when there is nothing to indicate that they are used in a particular sense, shall be given their ordinary or popular meaning." [Smith v. Railroad, 143 Mo. l. c. 37, 38; Martin v. Hunter, 14 U. S. 326.]

It might not be out of place here to state that the authorities before cited attach to the word "suit" a broader and more comprehensive meaning than is given to the word "action" or "case;" and it is of some significance that the broader term is used in the change of venue statute rather than the one employed in the Constitution regarding the jurisdiction of the circuit court. Section 22 of article 6 of the Constitution of 1875, stripped of all passages unimportant in this inquiry, provides that, "The circuit court shall have jurisdiction over all criminal cases not otherwise provided for by law; exclusive original jurisdiction in all *'civil cases'* not otherwise provided for." The evident intent was to confer upon litigants the right to a change of venue in cases pending in courts other than the cir-

cuit, consequently the Legislature extended that right to cases pending before justices of the peace and in the criminal court. We mention this fact simply to show the liberal spirit with which the lawmakers have dealt with the question of change of venue.

The wording of that statute, in so far as it is material in this case, is as follows: "A change of venue may be awarded in any civil suit to any court of record for any of the following causes."

This question seems to have never come before this court for adjudication before, but it has received attention at the hands of other courts of this country.

In a proceeding instituted by the common council of Kansas City, before the mayor, to inquire and find the value of the property taken for the purpose of widening a street, and to assess the benefits caused by the improvement so made upon the surrounding property, the jury found the value of the property taken to be $7,305, and assessed the benefits at $12,325. The case was appealed to the circuit court of Jackson county. A petition for removal to the United States Circuit Court was filed in said court, because a Federal question was involved, which was resisted, because, among other reasons assigned, such a proceeding was not removable under the United States statute which provides for the removal of certain suits from the State to the United States courts. The Supreme Court of the United States, in passing upon that question, said:

"This controversy is to all intents and purposes 'a suit.' . . . We think that the case was removable to that court under the act of March 3, 1875." [Pacific Railroad Removal Cases, 115 U. S. 5, 6, 17, 23.]

In Indiana an act of the Legislature created a "superior court," and gave to it "concurrent jurisdiction with the circuit court in all cases of appeal from

. . . boards of county commissioners, or city courts in civil cases, etc.'' A year after the passage of said act, a drainage act was passed, and the section thereof authorizing an appeal is general and does not designate the court to which the appeal is to be taken. After the passage of the latter act, a proceeding was instituted before the board of commissioners for the construction of a ditch under the provisions of the drainage act. From the judgment of the board establishing the drain, the appellants appealed to the superior court of Allen county. That court, on the motion of appellant, dismissed the appeal on the ground that no appeal to that court was authorized by law in such cases. The case was then appealed to the superior court, and in discussing that act, the court said: "It gives the superior court 'concurrent jurisdiction with the circuit court in all cases of appeals from . . . boards of county commissioners and mayors of [or] city courts in civil cases, etc.' " Continuing, the court said: "It is suggested that a drainage proceeding under the drainage act is not a civil case, and, therefore, the act does not confer jurisdiction of appeals on the superior court. To this it may be answered that no other proceeding before the board of commissioners is a civil case in the strict sense, and yet appeals are authorized from boards of commissioners to the superior court. The phrases 'civil cases' and 'civil causes' as used in the section quoted were evidently used in contradistinction to criminal cases, for the purpose of including all cases other than criminal cases. . . . This language was evidently intended to vest all appellate jurisdiction in the superior court which was then vested in the circuit court, except in criminal cases." [Hockemeyer v. Thompson, 150 Ind. 1. c. 178.]

In another case in Indiana, Bass and Gordon filed their petition in the circuit court, praying for the location and construction of a ditch or drain under the

drainage act; commissioners were appointed; they made·
their report to the court, and certain exceptions there-
to were filed, and, thereafter, Elliott and others filed. an
application for a change of venue from the judge of
said court, which was sustained. The cause was later
appealed to the superior court, and the first error com-
plained of was the action of the trial court in granting
the change of venue. That court said: "It is claimed
by counsel that a cause such as this is not a civil action,
but a special proceeding under the statute concerning
drainage; and, as that statute contains no provision for .
a change of venue from the judge . . . counsel
contend with some force and plausibility that the court
erred in sustaining the motion for a change of judge.
But, under the recent decisions of this court, the con-
struction of appellants' counsel is untenable and can-
not be sustained. Thus, in Neff v. Reed, 98 Ind. 341,
it was held substantially that a proceeding for a loca-
tion and construction of a ditch or drain, under the
statue concerning drainage, was so far a civil action
that the provisions of the civil code in relation to a
motion for a new trial, were allowable and applicable
to such proceeding. So, also, in Crume v. Wilson, 104
Ind. 583, the court said: 'We are of the opinion that
in drainage cases the modes of procedure and the rules
of practice prescribed by our civil code may properly
be used to supply omissions in the drainage statutes.'
Accordingly, it was there held that, although there is
no provision of our drainage statute which authorizes
the petitioner for a drain to dismiss his cause at any
time, of his own motion, yet the provisions of section
333, R. S. 1881, in relation to the dismissal of a civil
action by the plaintiff, were applicable to drainage
cases, and the petitioner for a drain might thereunder,
at the proper time, dismiss his petition. Applying the
doctrine of the cases cited to the case in hand, we have
no difficulty in reaching the conclusion that a proceed-

ing for the location and construction of a ditch or
drain, under our drainage statutes, is so far a civil
action that the provisions of sections 412 to 417, R. S.
1881, in relation to a change of venue from the judge,
. . . must be held applicable to such a case as the
one under consideration.'' [Bass'v. Elliott, 105 Ind.
l. c. 518, 519.]

According to the definitions and the foregoing au-
thorities it is clearly deducible that the words ''civil
cases'' as used in the Constitution and ''civil suits''
as employed in our civil code mean the proceeding, ac-
tions, or suits by which private rights are protected, en-
forced, or their violation redressed.  We are, therefore,
of the opinion that a proceeding under our statute for
the incorporation of a drainage district is so far a
civil suit that the section in relation to changes of venue
is applicable to such proceedings.  This conclusion is
supported by the language of Judge BLACK in a con-
demnation proceeding for a right of way for a railroad,
which is as follows:

''It is true the statute makes no specific provision
for raising these or like issues, but it is utterly unrea-
sonable to say that the defendant must be notified when
the petition will be heard, and yet, when he appears,
he cannot be heard to show that the petitioner has no
right to condemn the particular property for the al-
leged use.'' [Railroad v. Railroad, 94 Mo. l. c. 543.]
This case shows to what great length this court will go
in order to apply the provision of the civil code to this
class of special proceedings.

One of the most, if not the most, important steps
in these drainage proceedings is the incorporation and
the establishment of its boundaries.  Under the broad
and liberal provision of the drainage act very serious
injury might be inflicted upon the property-owners if
they were denied a fair or impartial trial at this stage
of the proceeding.

We have been cited to some cases of other States, which counsel for relators contend oppose the conclusions here reached, and support his theory of the case. Among them is the case of Cooke v. Cooke, 41 Md. 362. The question of a right to a change of venue arose in that case under a constitutional provision which provided for the change of venue in several different kinds of actions at law, but made no provision regarding equity cases. The Supreme Court held that a change of venue in an equity case would not lie under that provision of the constitution. While the wording in some particulars is similar to the wording of our statute upon that subject, yet a careful reading of the opinion will show that the court placed but little reliance upon the wording, but disposed of the case upon the former ruling of the court and the policy of their law. The other cases cited have but little bearing or weight in this case.

II. "The object and purpose of a writ of prohibition is to prevent a court of peculiar, limited or inferior jurisdiction from assuming jurisdiction of a matter beyond its legal cognizance." [2 Bailey on Jurisdiction, sec. 449; Smith v. Whitney, 116 U. S. 167; 16 Ency. Plead. & Prac., p. 1093.]

The writ is equally appropriate and available to keep such a court within the boundaries of its lawful power in given cases, no less than to prevent its cognizance of causes not consigned to its jurisdiction. [State ex rel. v. Slover, 126 Mo. 652; State ex rel. v. Withrow, 133 Mo. 500; 2 Bailey on Jurisdiction, sec. 447; Const. of Mo., 1875, sec. 3, art. 6; Railroad v. Wear, 135 Mo. 230; State ex rel. v. Spencer, 166 Mo. 271.]

It is not the purpose of the writ to correct errors of the trial court. If the application for a change of venue was not in conformity to the mandates of the statute, or if the proper notice was not given, then the

proper procedure was by appeal. If the court whose action is complained of acts within its jurisdiction, the writ of prohibition will not lie, however erroneous the action may be which the superintending tribunal is asked to prohibit. [State ex rel. v. Moehlenkamp, 133 Mo. 134; State ex rel. v. Laughlin, 10 Mo. App. 1; State ex rel. v. Lubke, 29 Mo. App. 555; State ex rel. v. St. Louis Court of Appeals, 99 Mo. 216.]

For the reasons before stated, the permanent writ is denied, and respondents are discharged from the rule.

All concur.