STATE ex rel. R. L. W., a Minor, Relator,

v.

The Honorable William H. BILLINGS, Judge of the Circuit Court of Stoddard County, Missouri, Respondent.

STATE ex rel. W. L. R., a Minor, Relator,

v.

The Honorable William H. BILLINGS, Judge of the Circuit Court of Stoddard County, Missouri, Respondent.

Nos. 54706, 54707.

Supreme Court of Missouri, En Banc.

March 9, 1970.

C. H. Parsons, Jr., Dexter, for relator Watkins.

Briney, Welborn & Spain, Joe C. Welborn, Bloomfield, for relator Reutzel.

Hiram H. Lesar, St. Louis, amicus curiae.

CHARLES SHANGLER, Special Judge.

In these original proceedings in prohibition, juvenile relators seek to prevent the respondent Judge of the Juvenile Division of the Circuit Court of Stoddard County, Missouri, from taking any further action, other than to enter orders disqualifying himself, under petitions alleging that relators were in need of care and treatment because they had violated state law. The inquiry under the petitions related to the alleged activity of the juveniles, aged 13 and 15 years respectively, who in the company of each other, broke into and entered a shed adjoining a residence and stole $200 from a trunk found there.

The court scheduled a hearing upon the petitions "to determine possible delinquency[1] and possible commitment to the State Training School". The relators filed their timely applications under Civil Rule 51.03(b), V.A.M.R., for the disqualification of the respondent judge, alleging that they could not have a fair trial before him because of his prejudice against them. Respondent denied the applications on the stated ground that: "(T)he Juvenile Code is a code in itself and there are no provisions for disqualifying the juvenile judge and therefore the application for disqualification of the juvenile judge is denied." The hearing on the petitions was rescheduled. Each relator filed his Petition for Writ of Prohibition in this court alleging, in substance, the matters we have described. We ordered the cases consolidated and

our provisional rule issued. We appointed the Honorable Hiram H. Lesar, Dean of the Law School, Washington University, St. Louis, Missouri, as amicus curiae to brief the respondent judge's side of the question raised by the pleadings. In his return, the respondent judge admitted that he had denied the relators' application to disqualify him, but alleged that it was proper to have done so as "Juvenile Court proceedings are governed by the Juvenile Code, which, unlike the Rules of Civil Procedure, contains no provision for disqualifying the judge".

█ The single question raised by the pleadings, therefore, is whether a juvenile court judge can be disqualified. We have concluded that he can, and therefore, our provisional rule in prohibition is made absolute.

Our decisions have long held, and the parties do not challenge the validity of that holding, that the right to a change of venue or to disqualify the judge did not exist except as granted by operative statute. Heather v. City of Palmyra, 311 Mo. 32, 276 S.W. 872, 875; Cole v. Cole, 89 Mo. App. 228, 233. The promulgation of Civil Rule 51.03, V.A.M.R., however, had the effect of superseding Sec. 508.090, which dealt with the same procedural subject. The rule, as did its predecessor statute, provides for a change of venue or disqualification of judge "in any civil suit". If it can be demonstrated, therefore, that the pending proceedings against them are properly characterized as "civil suits" within the meaning of the rule, relators' right to require respondent's disqualification will have been established and, hence, their right to our absolute rule in prohibition.

█ In construing change of venue statutes, including Sec. 508.090, we have de-

---

[1]. The juvenile Act of 1957, present Chapter 211, V.A.M.S., 1959, of course, contains no reference to "delinquency". Former Sec. 211.010(3), the last enactment doing so, was repealed by the present Act. The legislative purpose in discarding the terminology of "delinquen-

cy" is to be found in the Final Report of the Joint Committee on Juvenile Delinquency of the 68th General Assembly (Jan. 1957), pp. 11 et seq. As the principals in this action, nevertheless, have freely used that term in its colloquial sense, so do we.

fined "civil suits" to be those proceedings whereby the rights of private persons are protected or enforced, as contradistinguished from "criminal cases" which refer to public wrongs and their punishment. State ex rel. Kochtitzky v. Riley, 203 Mo. 175, 101 S.W. 567, 568–569; Hayes v. Hayes, 363 Mo. 583, 252 S.W.2d 323, 326–327. See, also: In re Estate of Boeving, Mo. App., 388 S.W.2d 40, 50. Essentially, therefore, civil suits are all those that are not criminal. State ex rel. Sharp v. Knight, 224 Mo.App. 761, 26 S.W.2d 1011, 1014. But we are not bound to the limits of this judicial definition of "civil suits" because, in any event, the provisions of the Rules of Civil Procedure are by their terms made generically applicable to juvenile court proceedings. Furthermore, the legislature has explicitly affirmed that juvenile proceedings are not criminal cases (Sec. 211.271). A delinquency hearing, therefore, is not a "criminal case", as it does not charge the juvenile with the commission of a crime, even though the conduct alleged against him may be the violation of a criminal law. It is but the assertion of "the state's power, parens patriae, for the reformation of a child and not for his punishment under the criminal law * * *". State ex rel. Matacia v. Buckner, 300 Mo. 359, 254 S.W. 179, 181; State ex rel. Shartel v. Trimble, 333 Mo 888, 63 S.W.2d 37, 39; State v. Harold, Mo.App., 281 S.W.2d 605, 606. And, although of late the parens patriae concept has come into such serious question as to have been "considerably shaken", juvenile proceedings still are not "criminal cases". State ex rel. Arbeiter v. Reagan, Mo., 427 S.W.2d 371, 375.

Sec. 211.171(6) provides: "The practice and procedure customary in proceedings in

equity shall govern all proceedings in the juvenile court." [2] As used in the Juvenile Act (Chapter 211, V.A.M.S., 1959), " 'Juvenile court' means * * * the circuit court of each county, except that in the judicial circuits having more than one judge, the term means the juvenile division of the circuit court of the county." The Rules of Civil Procedure, in turn, unless otherwise thereafter provided by statute, are made to specifically govern "the practice and the procedure in all suits and all proceedings of a civil nature, legal, equitable and special in the * * * Circuit Courts * * *". (Civil Rule 41.02, V.A.M.R.) Finally, Civil Rule 42.01, V.A.M.R. provides: "There shall be one form of action to be known as 'civil action' ".

Considering all these provisions together, and considering as well the essentially equitable provenance and purpose of the Juvenile Act (as expressed in Sec. 211.011) [3] and the statutory direction that equity practice govern all proceedings in the juvenile court, it is reasonable that such proceedings should be treated as equitable for procedural purposes. Now, by the explicit provisions of Civil Rule 41.02, "equitable" proceedings are made to come under the governance of the Rule of Civil Procedure. One of the procedural rights attending a suit in equity, as a species of a civil suit, is that of a change of venue. Walker v. Ellis, 146 Mo. 327, 48 S.W. 457, 458. A juvenile court is but a division of the circuit court and is thus a court of record. In re McFarland, 223 Mo.App. 826, 12 S.W.2d 523, 527; Sec. 211.021(3); see also: Article V, Sec. 28, Missouri Constitution, 1945, V.A.M.S. Therefore, the Rules of Civil Procedure apply, generally,

---

2. This statute, we believe to be merely the legislative recognition of equity's ancient concern and jurisdiction on matters touching the welfare of children. Ex parte Badger, 286 Mo. 139, 226 S.W. 936, 939; Minor children of F. B. v. Caruthers, Mo.App., 323 S.W.2d 397, 400. See also, Juvenile Courts of Missouri, by Noah Weinstein, Washington University Law Quarterly, 1957, Vol. 1, p. 18.

3. "The purpose of (the Juvenile Act) is to facilitate the care, protection and discipline of children who come within the jurisdiction of the juvenile court * * * (E)ach child * * * shall receive such care, guidance and control * * * as will conduce to the child's welfare * * * ".

to juvenile court proceedings in the only form of action recognized for procedural purposes, a civil suit or action. Thus, the delinquency proceedings pending against the relators are "civil suits" and, unless there are supervening reasons why it should not be, Civil Rule 51.03 relating to disqualification of judge in a "civil suit" is applicable to them.

Respondent insists that, as the Juvenile Act (Chapter 211) is "a complete law within itself", it would be inconsistent to require the proceedings in juvenile court to conform to any other prescribed procedure. Unquestionably, Chapter 211 contains numerous provisions, all of which apply exclusively to proceedings under it and which are intended to implement the unique statutory purpose of the Act. Thus, as respondent points out, a procedure is prescribed from the time a child is taken into custody (Sec. 211.061), relating to such matters as the form and contents of the petition (Sec. 211.091), issuance and service of summons (Secs. 211.101, 211.111), hearing procedure (Sec. 211.171), types of orders (Secs. 211.181, 211.201, 211.231, 211.241) and their modification (Sec. 211.251). In addition, the hearing procedure is left to the determination of the juvenile court judge [Sec. 211.171(1)].

While it has been frequently held that the Juvenile Act is a complete law within itself dealing with minors under the age of seventeen years (State ex rel. Shartel v. Trimble, supra, p. 38; State v. Heath, 352 Mo. 1147, 181 S.W. 517, 519; In re interest of C————, Mo.App., 314 S.W.2d 756, 760; State v. Harold, supra, 281 S.W.2d p. 606), it is obvious that the Act does not purport to set up its own procedures in all respects. For instance, while it provides for an appeal from judgments, orders or decrees entered by the Juvenile Court (Sec. 211.261), no provision is made for the procedure to be followed on appeal. When confronted with such lapses, the courts have tended to treat proceedings under the Juvenile Act in much the same manner as they have those special actions (Civil Rules 85 through 102, and certain other statutory actions) for which special procedures have been established suitable to their distinctive remedial purposes, but which were not intended to meet every procedural exigency. In such instances, the Rules of Civil Procedure (which have been made to govern special proceedings through Civil Rule 41.02) have been made applicable to such special action statutes where not inconsistent with or repugnant to them. State ex rel. R–1 School Dist. of Putnam County v. Ewing, Mo.App., 404 S.W.2d 433, 439 (Mandamus, Civil Rule 94); Associated Grocers' Co. of St. Louis, Mo. v. Crowe, Mo.App., 389 S.W.2d 395, 398–9 (Petition for Review under Sec. 288.210, V.A.M.S.); Herrman v. Dixon, Mo.App., 285 S.W.2d 716, 717 (Mechanics' and Materialmen's Lien, Civil Rule 101).

Comparably, as the Juvenile Act does not prescribe the procedure to be followed on appeal, appeals from juvenile court judgments have been held to be governed by the provisions of the Code of Civil Procedure applicable to appellate review of civil actions. In re interest of C————, supra, p. 760; In re M————P————S————, Mo.App., 342 S.W.2d 277, 282; In re M————L————J————, Mo.App., 356 S.W.2d 508, 509. Also, a guardian of a minor in a pending adoption proceeding was permitted to maintain an application for a change of venue for prejudice of the juvenile court judge although the applicable adoption statute, "a complete code in itself", contained no provision authorizing a change of venue, nor did any other statute relating to proceedings in the juvenile court. In re McFarland, supra, 12 S.W.2d p. 526. Change of venue was, nonetheless, authorized because an adoption proceeding was held to be a "civil suit"[4] within the meaning of the procedural statute dealing, generally, with change of venue.

4. The court relied on the judicial definition of "civil suit" as declared in State ex rel. Kochtitzky v. Riley, supra.

We do not believe that the application to the pending delinquency proceedings of Civil Rule 51.03 providing for the disqualification of judge for prejudice is either inconsistent with, or repugnant to, the special procedural and substantive provisions of the Juvenile Act. It would neither impair the achievement of those regenerative purposes so expectantly proclaimed in the Act (Sec. 211.011), nor would it present an impediment to the court's conduct of proceedings such as are pending against the relators, wherein punitive dispositions are likely. It is not, in any event, a question of the juvenile court judge's statutory prerogatives, but that of a fair trial before an impartial judge. And while the administration of the juvenile law, quite properly, involves a commitment to the concept of individualized treatment of the child, a juvenile court remains a court of justice. "It is abhorrent to one's sense of justice to contemplate an interested or prejudiced judge, either voluntarily sitting or being required to sit, in any case." State ex rel. Sharp v. Knight, supra, 26 S.W.2d p. 1015. The provisions of Civil Rule 51.03 were applicable to the proceedings against the relators pending before the respondent. There is no contention that the application was not in due form or in due time. Respondent exceeded his jurisdiction when he refused to disqualify himself.

Respondent also urges that the application of Civil Rule 51.03 authorizing the disqualification of judge, would "thwart" the purpose of the Juvenile Act "to facilitate the care, protection and discipline" of the children coming before the court. (Sec. 211.011) It would also involve, he argues, the application of a procedure "which was obviously designed for adversary proceedings * * * to proceedings not intended to be adversary in character". We have already explained how the implementation of Civil Rule 51.03 in delinquency proceedings would have the effect of ensuring fair trials for juveniles and would, therefore, "thwart" no legitimate purpose of the Juvenile Act. Neither will it do, merely "to facilitate the care, protection and discipline" of the juveniles (and thus, according to respondent, preserve the nonadversary character of juvenile court proceedings) to effectively deny to relators, only because they are children, a procedural right available to any other principal in comparable special proceedings.[5] On the contrary, so that the obvious purpose of the rule governing change of venue and disqualification of judge should not be defeated, it should be given its most encompassing application to the particular class of civil proceedings to which the rule refers. Hayes v. Hayes, supra, 252 S.W.2d p. 327 [2]; In re Estate of Boeving, supra, 388 S.W.2d p. 50 [8–9].

Even if, as respondent suggests, juvenile court proceedings were not intended to be adversarial, we have recognized that in certain phases of such proceedings wherein a juvenile has been charged with the violation of a criminal statute, they have actually become so.[6] And, although, the issue presented here is not couched in terms of constitutional right—and is not decided on that basis—the adversarial nature of such proceedings as are now pend-

---

5. Changes of venue as "civil suits" were allowed in such special actions as that for the incorporation of a drainage district (State ex rel. Kochtitzky v. Riley, supra, 101 S.W. p. 570), in a mandamus action (State ex rel. Sharp v. Knight, supra, 26 S.W.2d p. 1013), in a certiorari proceeding (State ex rel. Bixman v. Denton, 128 Mo.App. 304, 107 S.W. 446, 448).

6. The taking of a confession from a juvenile while in the custody of the juvenile court, with the purpose of using it against him in a subsequent criminal proceeding, was sufficiently adversarial in character as to constitutionally require that the juvenile be informed of his Fifth Amendment right against self-incrimination before its taking in order to render the confession admissible. State v. Arbeiter, Mo., 449 S.W.2d 627; State ex rel. Arbeiter v. Reagan, Mo., 427 S.W.2d 371, supra (concurring opinion of Finch, J., at p. 379).

ing against the relators, wherein they are charged with violations of a criminal statute, so that an adjudication adverse to them may result in their commitment to a state institution, has also been recognized.[7] (Sec. 211.181) Under the circumstances, we do not believe that making Civil Rule 51.03 available to relators would inject an adversarial element, not already existing, in juvenile court delinquency proceedings.

Finally, we take note of relators' argument that had they been adults, rather than juveniles, charged under the same state of facts which forms the basis for the proceedings against them before the respondent, they would have been entitled to disqualify the judge for prejudice. This is doubtless so. See: Criminal Rules 30.12, 30.13, V.A.M.R. Yet, as respondent would agree, relators may not avail themselves of those rules because the proceedings pending against them are not "criminal cases".[8] To deny relators the benefit of Civil Rule 51.03, therefore, would be to consign them to a limbo beyond the reach of both the Civil and Criminal Rules merely because they are juveniles. It would require them to present their evidence before a tribunal whose impartiality has been brought into question, yet which retains the power to commit them to an institution where they may be lawfully detained until their twenty-first year. Sec. 211.181.

Civil Rules of Procedure are intended "to provide for just determination of every civil proceeding". Civil Rule 41.03; Associated Grocers' Co. of St. Louis, Mo. v. Crowe, supra, 389 S.W.2d 395, p. 399. It also provides that they shall be construed "to secure simplicity and uniformity in civil procedure, fairness in the administration of justice * * *". We believe the result we reach accomplishes that.

Our provisional rule in prohibition is made absolute and respondent is prohibited from taking any further action in these cases except to enter appropriate orders disqualifying himself therein, and concurrently to call in another circuit judge to sit in the cause or request the Supreme Court to transfer a judge to try the cause.

HENLEY, C. J., and FINCH, DONNELLY, SEILER, MORGAN and HOLMAN, JJ., concur.

STORCKMAN, J., not sitting.

---

7. In re Gault, 387 U.S. 1, 13, 30, 87 S.Ct. 1428, 18 L.Ed.2d 527. That the respondent judge was not insensible to either the relators' right to a fair trial or to the actuality that such delinquency proceedings are essentially adversarial is attested by his appointment of counsel to represent one of the juveniles who would not otherwise have been represented.

8. Respondent argues that juvenile court proceedings are neither criminal cases nor civil actions, but "sui generis". He relies upon In re White (Alaska), 445 P.2d 813 where an attempted disqualification of a juvenile court judge was disallowed because the statutory provisions governing such disqualification were limited in application to "civil or criminal" actions and a juvenile court proceeding was held to be neither. The Alaska statute, however, contained no provisions or definitions comparable to the Civil Rules which we have discussed, nor were the provisions or purposes of the Alaska juvenile statutes cited or discussed. The pragmatic reasons for refusing to recognize disqualification of judges in juvenile court proceedings are disarmingly stated in page 815 of the opinion. The geography of Alaska and the scarcity of judicial personnel do not permit it.