STATE of Missouri ex rel. R–I SCHOOL DISTRICT OF PUTNAM COUNTY, Missouri, Stewart Pratt, Melvin Sparks, Robert Rockwood, W. E. Ross, Gerald Brown, Adrien E. Lewis, the Official Board, Relators,

v.

Hon. J. Doerr EWING, as Transferred Judge of the Circuit Court of Putnam County, Missouri, Respondent.

No. 24354.

Kansas City Court of Appeals.

Missouri.

June 6, 1966.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 29, 1966.

V. C. Rose, Rose & Brown, Trenton, for relators.

William Y. Frick, Frick & Frick, Kirksville, for respondent.

## ORIGINAL PROCEEDING IN PROHIBITION

BLAIR, Judge.

This prohibition proceeding originated in this court. Relators are the official board of R–1 School District of Putnam County and respondent, Honorable J. Doerr Ewing, Judge of the 4th Judicial Circuit, is Special Judge of the Circuit Court of Putnam County by transfer order of the Supreme Court for the trial of a mandamus proceeding in which the relators in that proceeding sought a peremptory writ to compel the former directors of Worthington District No. 69 of Putnam County, as respondents, to deliver to relators all property, books, papers, records and monies of Worthington School District No. 69. Justification for the mandamus proceeding was alleged to be an election held on July 28, 1964, approving a reorganization which absorbed Worthington School District No. 69 into R–1 School District and the subsequent refusal of Worthington School District to deliver to R–1 School District all of its property, books, papers, records and monies.

The respondent judge issued an alternative writ of mandamus and subsequent pleadings of the parties put the proceeding at issue. Simultaneously with their return to the alternative writ respondents filed a counterclaim in two counts against relators alleging in substance, in each count, that a number of students of former Worthington School District had lawfully been assigned by the Putnam County Superintendent of Schools to a Schuyler County School District, Queen City No. 2, and that relators had refused to pay Queen City No. 2 the customary and legal charges for tuition and transportation of these pupils and praying for a declaratory judgment that the relators were legally required to pay these charges. We see no need for further particularization of the allegations of the counterclaim. We notice that originally respondents also included these same claims in their return to the alternative writ and that on motion they were stricken from the return by the court.

To the counterclaim relators filed a motion to strike which was overruled by respondent judge. Thereupon they filed a general denial of the allegations of the

counterclaim, reserving the right later to urge error in the ruling of respondent judge on the motion to strike.

The mandamus proceeding was tried and adjudged first, with the counterclaim standing in abeyance. Upon motion for summary judgment filed by relators, the respondent judge found that they were entitled to a peremptory writ of mandamus requiring the directors of former Worthington School District immediately to turn over all property, books, papers, records and monies of such former district and thereupon he issued a peremptory writ in conformity with his finding. This judgment has long since become final. The briefs admit, or, at least, do not controvert, that relators have taken no step by any method, contempt or otherwise, to enforce compliance with the peremptory writ. There is no suggestion that the respondent judge has withheld or stayed execution of the writ.

Following entry of the judgment in the mandamus proceeding, the respondent judge announced he proposed to entertain and determine the issues raised by the counterclaim at a future date. The relators in the mandamus proceeding then filed an application in this court for a writ of prohibition commanding the respondent judge to refrain from proceeding to entertain or determine the issues raised by the counterclaim, contending that there is no authority in the Civil Rules or elsewhere in our law for entertaining and determining a counterclaim in a mandamus proceeding and that for respondent judge to do so would be an action in excess of his jurisdiction. We issued our preliminary rule to respondent judge, in accordance with the application for prohibition, commanding him to "refrain from hearing, trying or determining" the counterclaim and to show cause why the preliminary rule should not be made absolute. In due course, respondent judge made return asserting that he had jurisdiction to entertain and determine the issues raised by the counterclaim. Relators

denied this assertion by reply and this prohibition proceeding stands at issue.

Squarely presented is the question whether the respondent judge has jurisdiction, by force of the Civil Rules, or by law elsewhere in our jurisprudence, to entertain and determine the counterclaim which was filed in the mandamus proceeding. By constitutional authority granted in 1945 the Supreme Court was authorized to establish rules of practice and procedure for all courts, superseding all existing court rules and statutes in conflict with such rules, with the right reserved to the General Assembly to annul or amend any rule established by that court "by a law limited to the purpose." Sec. 5, Art. V, Const. of Mo. 1945, V.A.M.S. Pursuant to this authority the Supreme Court established "Rules of Civil Procedure", numbered 41 to 102, in 1959. Civil Rule 41.02, V.A.M.R., provides: "Rules—When Applicable. Unless otherwise hereafter provided by statute the Rules of Civil Procedure shall govern the practice and the procedure in all suits and all proceedings of a civil nature, legal, equitable and special in the following courts: Supreme Court, Courts of Appeals, Circuit Courts, and Courts of Common Pleas."

■ Since the Supreme Court in establishing the Civil Rules as the law governing practice and procedure in the courts exercised a power always committed to the General Assembly prior to 1945, we believe that certain canons of construction employed in ascertaining the meaning of enactments of that body should apply alike in ascertaining the meaning of the Civil Rules established by the Supreme Court. With this in mind, we will paraphrase and apply, in the course of this opinion, certain canons of construction we believe applicable in determining the meaning of Civil Rule 41.02 and relevant to the question we must decide.

■ The historical background of this rule, and the evolution in the law which preceded its establishment, are proper and

relevant subjects of inquiry in arriving at its meaning. State ex rel. Smith v. Atterbury, 364 Mo. 963, 270 S.W.2d 399; Kansas City v. Travelers Ins. Co., Mo.App., 284 S.W.2d 874. Searching for the meaning of Civil Rule 41.02 we are authorized to examine the history of all prior civil codes enacted by the General Assembly and prior rules of the Supreme Court relating to the question before us as well as the decisions construing those codes and rules. Lemasters v. Willman, Mo.App., 281 S.W.2d 580; State v. Hanson, 234 Mo. 583, 137 S.W. 968; Memmel v. Thomas, 238 Mo. App. 403, 181 S.W.2d 168. We are entitled to presume that the Supreme Court in establishing the Civil Rules was acquainted with the history of those codes and rules and the decisions construing them. Mack Motor Truck Corp. v. Wolfe, Mo.App., 303 S.W.2d 697; Howlett v. Social Security Commission, 347 Mo. 784, 149 S.W.2d 806; Mo. Digest, Vol. 26, Statutes, .

██ Prior to the establishment of the Civil Rules, mandamus had traditionally been characterized by our courts as an "action at law" and as a "legal remedy". Horton v. Bourke, 344 Mo. 826, 129 S.W.2d 866; State ex rel. v. Bank of Conception, 174 Mo.App. 589, 163 S.W. 945; State ex rel. Kinneard v. Jackson County Court, Mo. App., 17 S.W.2d 572; Mo. Digest, Vol. 19, Mand., Mandamus had also been characterized by our courts as "a special proceeding" and it unquestionably is such a proceeding. State v. Cook, Mo.App., 201 S.W. 361; State ex rel. Downs v. Kimberlin, Mo., 260 S.W.2d 552.

██ In Missouri, the comprehensive Field Code of Civil Procedure, adopted in 1849, and thereafter amended from time to time, continued to govern procedure in civil cases until 1943. One provision of the 1849 Code of Civil Procedure was Sec. 6, Art. XXX, Laws of Missouri 1849: "Until the legislature shall otherwise provide, this act shall not affect proceedings upon mandamus * * *." In 1854 the Supreme

Court construed this provision as meaning exactly what it said: "The code of practice does not apply to proceedings upon mandamus." Smith v. St. Francois County Court, 19 Mo. 433. In 1855 the above section of the 1849 Code of Civil Procedure had disappeared from the Code and a new provision had been substituted. Sec. 22, Art. IX, Chapter 128, R.S.Mo.1855 read as follows: "The provisions of this article shall extend * * * to all writs of mandamus * * * and to the proceedings thereon; * * *". Art. IX, of Chapter 128, R.S.Mo.1855 applied only to amendments of pleadings and to no other provisions of the 1849 Code. Thereafter sporadic efforts of varying types were made to utilize provisions of the Civil Code in mandamus proceedings other than the article permitting amendments but they uniformly met judicial rejection. "At the adoption of the practice act, in 1849, it was provided, by section 6 of article 30, that the act should not affect proceedings upon mandamus until otherwise provided. At the present time the article relating to amendments is in express terms made to apply to writs of mandamus; thus showing by clear implication that in other respects it does not apply. Hence we held in State [ex rel. Gordon] v. Burkhardt, 59 Mo. [75] 79, that the general provisions of the practice act allowing all persons having an interest in the suit to be made plaintiffs or defendant had no application to proceedings by mandamus." State ex rel. Conran v. Williams, 96 Mo. 13, 8 S.W. 771, 772. See also: State ex rel. Baker v. Fraker, 166 Mo. 130, 65 S.W. 720; State ex rel. Hentschel v. Cook, Mo.App., 201 S.W. 361, 363.

Thereafter Sec. 22, Art. IX, Chapter 128, R.S.Mo. 1855 was continued in the Revised Statutes in substantially the same form until 1943. Sec. 987, Art. VI, Chapter 6, R.S. Mo. 1939. No law had been enacted enlarging the application of the Civil Code to mandamus proceedings and no judicial ruling had undertaken to do so. In 1943 the General Assembly repealed all of Art. VI, Chapter 6, R.S.Mo. 1939, including, of

course, Section 987, and enacted a new and comprehensive practice act called the Civil Code of Missouri. Sec. 2, p. 357, Civil Code of Missouri, Laws of Missouri, 1943, Sec. 506.010 V.A.M.S. provided: "This code shall be known as the Civil Code of Missouri and shall govern the procedure in the supreme court, courts of appeals, circuit courts and common pleas courts in all suits and proceedings of a civil nature whether cognizable as cases at law or in equity, *unless otherwise provided by law.*" (Emphasis supplied.)

The new Civil Code contained a provision empowering the Supreme Court to direct the form of writs and process and to promulgate general rules of procedure for all courts of the state so long as they were not, "contrary to or inconsistent with the laws in force for the time being." Sec. 10, p. 359, Civil Code of Missouri, Laws of Missouri, 1943, Sec. 477.010, R.S.Mo. 1949, V.A.M.S. Thereafter on November 10, 1944, the Supreme Court adopted numerous rules supplementing and harmonizing the provisions of the 1943 Civil Code of Missouri. Among these rules was Sec. 3.02(a) "Procedure to be Followed: * * * If any special procedural statute refers to or adopts the provisions of the Code of Civil Procedure, and also refers to a particular method of procedure which has been changed by the Civil Code, then and in that event, the substitute procedure prescribed by the Revised Civil Code shall be employed."

Following enactment of the Civil Code of Missouri and especially Sec. 2, p. 357, Laws of Mo., 1943, Sec. 506.010, R.S.Mo. 1949, V.A.M.S., supra, and the promulgation of the rules the Code authorized the Supreme Court to adopt, and especially Sec. 3.02(a), supra, of those rules, the appellate courts ruled that the code, although of general application to suits of a civil nature, did not apply to special proceedings where the proceedings prescribed were complete in themselves and not altered by the application of Sec. 3.02(a) or by law. "The civil code, although of general application to suits in the circuit court, does not apply to all civil actions. Section 1 of the Code, Laws 1943, pp. 353, 356, repeals specific sections of the general procedural statutes then in force and enacts a new code *'in lieu of' those sections.* It does not repeal any statute providing a special remedy. Section 2 of the Code, § 506.010, makes the code applicable to all suits and proceedings of a civil nature 'unless otherwise provided by law.' Obviously, it does not change the law relating to will contests. S. Ct. Rule 3.02(a) provides that if any special procedural statute (the will contest statute is unquestionably a special procedural statute) refers to or adopts the provisions of the code, then the substitute procedure prescribed shall be employed. The statute authorizing will contests, § 468.580, does not refer to or adopt the provisions of the code. To the contrary, it prescribes, to the extent therein stated, its own procedure by fixing the conditions upon which a will contest may be maintained, the sole issue to be tried, the forum in which it must be tried and declaring it to be an action at law. Consequently, it cannot be persuasively argued that the provisions of the code relating to permissive joinder destroy or broaden the single issue defined in the statute authorizing such contests and the method therein prescribed for its determination." State ex rel. Siegel v. Strother, 365 Mo. 861, 289 S.W.2d 73, 1. c. 80. See also: Choate v. State Department of Public Health & Welfare, Mo.App., 296 S.W.2d 189, 192; Green v. Green, Mo.App., 240 S.W.2d 741, 742; Herrman v. Dixon, Mo. App., 285 S.W.2d 716, 717; State ex rel. Schwartz v. Buder, Mo.App., 315 S.W.2d 867, 869; State ex rel. Fawkes v. Bland, 357 Mo. 634, 210 S.W.2d 31, 36.

■ All of the decisions to which we have just referred were rendered by our appellate courts prior to the establishment by the Supreme Court of the present Civil Rules in 1959. Still paraphrasing canons of construction applicable when construing enactments of the General Assembly, the

Supreme Court must be presumed to have been aware of these decisions and of the state of its rules and the law when it promulgated Civil Rule 41.02 providing that "Unless otherwise hereafter provided by statute, the Rules of Civil Procedure shall govern the practice and the procedure in all suits and all proceedings of a civil nature, legal, equitable and *special* * * *," (Emphasis supplied) for certainly when the Supreme Court itself or any other court or last resort has construed a statute or a rule, the Supreme Court is presumed to be aware of that construction when it establishes a rule superseding the former rule or statute dealing with the same subject. Jacoby v. Missouri Valley Drainage Dist. of Holt County, 349 Mo. 818, 163 S.W.2d 930; Mack Motor Truck Corp. v. Wolfe, Mo. App., 303 S.W.2d 697, 701; 26 Mo. Digest, Statutes, Courts of appeals are courts of last resort. State ex rel. Missouri Gas & Electric Service Co. v. Trimble, 307 Mo. 536, 271 S.W. 43; State ex rel. American Car & Foundry Co. v. Daues, 313 Mo. 681, 282 S.W. 389; State ex rel. Hoyt v. Shain, 338 Mo. 1208, 93 S.W.2d 992; 8 Mo. Digest, Courts, 

 Simultaneously with the establishment of Civil Rule 41.02 the Supreme Court established also Civil Rule 41.04: "Supreme Court Rules 1, 2 and 3, and existing court rules and statutes in conflict with these Rules of Civil Procedure are superseded by these Rules of Civil Procedure." This rule effectively repealed the then existing rule, Sec. 3.02(a) and Sec. 2, p. 357, Civil Code of Missouri, Laws of Missouri, 1943,

Sec. 506.010, RSMo 1949, V.A.M.S., and established in their stead Civil Rule 41.02. It is to be presumed that the Supreme Court by superseding this former rule and this statute and substituting Civil Rule 41.02 dealing with the same subject intended to effect some change in the proscriptions of the existing statute and rule excluding the application of the Civil Code of Missouri to special proceedings except in the circumstances they specified. Wright v. J. A. Tobin Const. Co., Mo.App., 365 S.W.2d 742; Darrah v. Foster, Mo., 355 S.W.2d 24.

 There is no decision by our appellate courts which decides the question whether in a mandamus proceeding, a special proceeding, a counterclaim may be introduced. The rulings from other jurisdictions are either based on statutes or judicial reasoning that is irrelevant, in our opinion, to the question before us due to the historical background, evolution and express language of Civil Rule 41.02.[1] The language of Civil Rule 41.02 is explicit in directing that the Rules of Civil Procedure shall govern practice and procedure in all suits and all proceedings of a civil nature, legal, equitable and special. We are convinced that the intention of the Supreme Court in establishing this rule was to bring into application in special proceedings those Civil Rules it was simultaneously establishing which were consistent with such proceedings and not repugnant to them.

 We do not believe that the introduction of a counterclaim provided for by Civil Rule 55.46 is always repugnant to

[1]. City of Leavenworth v. Leavenworth City & Ft. L. Water Co., 62 Kan. 643, 64 P. 66; State ex rel. Harvey v. Plankinton Arcade Co., et al., 182 Wis. 23, 195 N.W. 904; People ex rel. Wiebolt Stores, Inc. v. City of Chicago, et al., 289 Ill.App. 276, 7 N.E.2d 82, reversed on other grounds, 368 Ill. 421, 14 N.E.2d 473; Hannum v. State ex rel. Hannum Co., 135 Fla. 3, 184 So. 500; Harris et al. v. Garner, 160 Ga. 752, 128 S.E. 913; Cope v. Collins, Admr., 37 Ark. 649; State v. Alexander, 115 Tenn. 156, 90 S.W. 20; Aplin v. Board of Supervisors of Grand Traverse County, 73 Mich. 182, 41 N.W. 223, 16 Am.St.Rep. 576; Aplin v. Van Tassel, 73 Mich. 28, 40 N.W. 847; Fun Fair Park, Inc. v. Municipal Court of City of N. Y., Sup., 201 N.Y.S. 2d 706; Town of Columbus v. Barringer, CCANC, 85 F.2d 908; Hazelton Moffit Special School Dist. No. 6 v. Ward, N.D., 107 N.W.2d 636; State ex rel. Joyce v. Bivens, 145 W.Va. 545, 114 S.E.2d 901; 55 C.J.S. Mandamus § 281, p. 519.

proceedings in mandamus. We are not holding that a counterclaim may be introduced in an original proceeding in mandamus in the Supreme Court or the Courts of Appeals. The jurisdiction of those courts is defined and limited by the Constitution. Their jurisdiction is wholly appellate, except they are empowered to issue and determine original remedial writs and they possess original jurisdiction to exercise their inherent powers. Secs. 3, 13, 4, Art. V, Const. of Mo., V.A.M.S., Vol. 2; In re: Sizer, 306 Mo. 356, 267 S.W. 922; State ex rel. Selleck v. Reynolds, 252 Mo. 369, 158 S.W. 671; In re: Richards, 333 Mo. 907, 63 S.W.2d 672. They have no original jurisdiction to entertain and determine controversies over which inferior courts have been granted exclusive original jurisdiction by the Constitution. Sec. 14, Art. V, Const. of Mo., V.A.M.S., Vol. 2. In particular, they would have no original jurisdiction over a counterclaim for a declaratory judgment in a mandamus proceeding, for exclusive original jurisdiction of suits for a declaratory judgment is vested in the circuit courts. State ex rel. Wulfing et al. v. Mooney, et al., 362 Mo. 1128, 247 S.W.2d 722, 726; State ex rel. McNary et al. v. Mooney, et al., 362 Mo. 1139, 247 S.W.2d 726, 728. For other pertinent illustrations see: State ex rel. State Highway Comm. v. Dockery, Mo., 300 S.W.2d 444, 452; State ex rel. Roland v. Dreyer, 229 Mo. 201, 129 S.W. 904, 912; Lane et al. v. Charless, 5 Mo. 285; State ex rel. Waterworth v. Harty, 275 Mo. 59, 204 S.W. 500; Vail, contestor v. Denning, contestee, 44 Mo. 210; Foster v. State, 41 Mo. 61.

 But relators argue that to permit a counterclaim in any court in any mandamus proceeding would cause mandamus to "degenerate into another law suit completely destroying the uses and purposes * * * long incident to mandamus, and would destroy one of the most important extraordinary remedies known to the law." We cannot agree with this argument

for reasons we shall presently state. They say that "a long line of decisions in this state sustains the proposition that mandamus is a legal and not an equitable remedy, being a stern, harsh writ and, when issued, is an unreasoning, inflexible peremptory command to do a particular thing therein specified without conditional limitations of any kind. Its office is to execute, not to adjudicate; nor can it adjust or ascertain mutual claims or rights between the parties." Except for failing to characterize mandamus as a legal *and* a special proceeding, relators are correct in this last statement. State ex rel. v. Bank of Conception, 174 Mo.App. 589, 163 S.W. 945, 948; State ex rel. Standefer v. England, Mo.App., 328 S.W.2d 732, 737. However, the answer to it seems to us to be that the mandamus was not utilized by the respondent judge or the litigants to "adjust or ascertain mutual claims or rights between the parties." The respondent judge tried and adjudged the mandamus proceeding according to the law governing mandamus proceedings. It is true that an attempt was made by respondents in that proceeding to violate the rule against employing it to "adjust or ascertain mutual claims or rights between the parties". As already noticed, they included in their return to the alternative writ the allegations of the counterclaim and the court promptly struck them from the return as irrelevant to that proceeding. The peremptory writ was issued unconditionally and in strict accordance with the prayer of the petition and the alternative writ. There was no interference with the orderly adjudication of the mandamus proceeding in accordance with governing law and no subversion of the office of the writ. We see nothing repugnant to the mandamus proceeding in permitting the introduction of the counterclaim in such proceeding in a court possessed of exclusive original jurisdiction of the subject of the counterclaim. For we fail to discover any justification for relators' apprehension that permitting a counterclaim in a mandamus proceeding will cause it to "degenerate into another

law suit completely destroying * * * one of the most important extraordinary remedies known to the law." The manner of the trial and the adjudication of the mandamus proceeding we are considering seems to us to be answer enough. We therefore hold that the counterclaim could be introduced in the mandamus proceeding, by authority of Civil Rule 41.02, and that it can be entertained and determined by the respondent judge without exceeding his jurisdiction.

Suggestion is made in the petition for prohibition in this court that the counterclaim is defective. This suggestion is not developed in relators' brief. Indeed, relators tell us in their brief "reduced to essence this proceeding poses only one question for the determination of this court: Can a counterclaim be filed in a mandamus suit the object and purpose of which is to adjudicate, adjust, determine, ascertain and define mutual rights between the parties, and others, if necessary? Relators herein take the position that a counterclaim in a mandamus suit is not a permissible, lawful or proper pleading." What we have already said disposes of this question. We are not authorized to grant prohibition to prevent a trial on a defective pleading unless it is so obviously and fatally defective that it is plain that the defect cannot be cured by amendment. No effort has been made to demonstrate that the counterclaim is defective to this extent. In the absence of a showing that it is so defective, we must presume that any defect that may exist may be cured by amendment in the trial court. State ex rel. v. Brady, Mo., 308 S.W.2d 652, 654; State ex rel. Reed v. Harris, 348 Mo. 426, 153 S.W.2d 834, 837; State ex rel. Leake v. Harris, 334 Mo. 713, 67 S.W.2d 981, 982.

Accordingly, it follows that our preliminary rule in prohibition must be discharged. It is so ordered.

All concur.