455 S.W.2d 3 (1970)
In the Interest of T____ G____, Jr., a child under seventeen years of age.
STATE of Missouri, Plaintiff-Respondent,
v.
T____ G____ Jr., by T____ G____ Sr., Natural Guardian, Defendant-Appellant.
No. 33333.
St. Louis Court of Appeals, Missouri.
May 26, 1970.
*4 Vernon C. Oetting, Earnest L. Keathley, St. Louis, for defendant-appellant.
Brendan Ryan, Circuit Atty., John J. Bantle, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.
WEIER, Commissioner.
T______ G______, Jr., was found by the juvenile court to be under the age of 17 years and within the provisions of Section 211.031, RSMo 1959, V.A.M.S. The court determined the behavior, environment and association of the child were injurious to his welfare and to the welfare of others as described in subsection 1(c) of this section. The court further found that the juvenile had committed an act of voluntary manslaughter, and that the act was not done in lawful self defense. This squarely placed him under the terms of subsection 1(d) in *5 that he was adjudged to have violated a state law. These findings and adjudication of delinquency were contained in a formal judgment entered in the records of the court on January 24, 1968, after a hearing that lasted two days. The child was represented by counsel and the trial was attended by his parents. At the conclusion of this hearing as to culpability and after rendering the judgment indicated, the court continued the cause for disposition pending the completion of a social investigation.
Thereafter, on March 25, 1968, the court conducted a dispositional hearing. Again the child, his parents and counsel were present and evidence was submitted to the court. At the conclusion of the hearing, the court ordered the child committed to the State Training School for Boys (Sec. 211.181, Sec. 219.160, RSMo 1959, V.A.M.S.).
A motion to vacate and set aside the judgment and for an order directing acquittal and discharge of defendant, or in the alternative for a new trial was filed April 8, 1968. On April 11, 1968, the court denied the motion. Previously the child had been denied supersedeas bond and had been committed to the State Board of Training Schools for an indeterminate period after the dispositional hearing on March 25, 1968.
Notice of appeal was filed April 29, 1968. It states that the appeal is taken from the judgment of the court entered March 25, 1968, finding that the child violated Section 211.031, subsection 1(d), in being delinquent by reason of voluntary manslaughter. But the judgment of March 25, 1968, contains no finding or determination of culpability. Rather, it is the judgment of January 24, 1968, that so finds.
We are immediately confronted with a question as to our jurisdiction on appeal. Since the appeal was not taken within thirty days after the determination of culpability on January 24, 1968, can we now entertain an appeal which though taken from the dispositional judgment of March 25, 1968, has as its only issue the question as to whether there was sufficient substantial evidence in the record to establish culpability? Even though our jurisdiction is not challenged by the state, we are obliged to examine the record and make such determination sua sponte. The urgency of this introspection is evident in view of our previous holding in In re Juvenile Delinquency Appeal, Mo.App., 289 S.W.2d 436.
Section 211.261, RSMo 1959, V.A.M.S., is the section of the Juvenile Code which concerns itself with appeals from judgments of the juvenile court. It authorizes an appeal to a child from any final judgment order or decree made under the provisions of the code, (Chapter 211). It requires: "Notice of appeal shall be filed within thirty days after the final judgment, order or decree has been entered * * *." Nothing within the law pertaining to juveniles can be found which indicates when or what judgment shall be considered final. Considering a previous law, this court decided in In re Juvenile Delinquency Appeal, supra, that the determination of the status of the child and the determination of the question of commitment were separate and distinct, each terminating in a final judgment or order from which an appeal would lie. This decision relied upon the case of In re Campbell, 323 Mo. 757, 19 S.W.2d 752, 754, where the court had before it the construction of Sec. 2610, RSMo 1919, which later became Sec. 211.170, RSMo 1949, V.A.M.S. But the statute construed in Campbell which related to proceedings in first and second class counties, specifically provided that an appeal should be allowed from "any final judgment of delinquency or dependency, or final order of commitment * * * and from any modification of such order * * *." It spelled out in detail that an appeal could be taken from either a judgment determining delinquency or a judgment determining disposition of the child. The statute before this court in In re Delinquency Appeal, was Section 211.410, RSMo 1949, V.A.M.S., which applied to third and fourth class counties. This section did not use the same language as 211.170. It merely said that an *6 appeal might be taken from "any final order or judgment" without elaborating on what was intended as a final judgment. The conclusion was reached in that opinion on the basis that it appeared the legislative intent was the same and that the two statutes should receive the same construction. This would seem to be logical since the legislature would surely not have intended that one type of judgment would be final in certain counties and not in another in the same state.
Then in 1957 one year after our decision in In re Delinquency Appeal, the legislature repealed the sections found in RSMo 1949 pertaining to juveniles including the two appeal sections and enacted in their place the present Juvenile Act, Sections 211.011 to 211.431, RSMo 1959, V.A.M.S. The act applies throughout the state without any variance as to different classes of counties. Pertinent portions of sections of this act with which we are here concerned are:
Sec. 211.031. "Except as otherwise provided herein, the juvenile court shall have exclusive original jurisdiction in proceedings:
(1) Involving any child who may be within the county who is alleged to be in need of care and treatment because:
* * * * * *
(c) The behavior, environment or associations of the child are injurious to his welfare or to the welfare of others; or
(d) The child is alleged to have violated a state law or municipal ordinance; * * *."
Sec. 211.181. "When a child is found by the court to come within the applicable provisions of section 211.031, the court shall so decree and make a finding of fact upon which it exercises its jurisdiction over the child and the court may, by order duly entered, proceed as follows:
(1) Place the child under supervision in his own home or in custody of a relative or other suitable person upon such conditions as the court may require;
(2) Commit the child to the custody of:
(a) A public agency or institution authorized by law to care for children or to place them in family homes;
(b) Any other institution or agency which is authorized or licensed by law to care for children or to place them in family homes; * * *."
Section 211.261. "An appeal shall be allowed to the child from any final judgment, order or decree made under the provisions of sections 211.011 to 211.431 * * *."
In the case at bar, at the conclusion of the evidentiary hearing as to culpability on January 24, 1968, the court orally indicated a finding that the juvenile had committed voluntary manslaughter. The judge then concluded his remarks with this statement: "So without making any ruling as to disposition at this time, Mr. Manion (Deputy Juvenile Officer), you complete your social investigation and then make your report and furnish Mr. Oetting (Juvenile's attorney) a copy of it then we will come back and see what kind of disposition will be made of the case."
When the dispositional hearing was completed, the court referred to the previous finding of the child's culpability, but again indicated that the case had been "passed over" to the morning of March 25, 1968, for "hearing on the dispositional phase." Commitment was then made to the State Training School for Boys.
Review of the two court orders written in the juvenile court record reveals that in the one entered January 24, 1968, the court found the child to be under the provisions of Section 211.031, supra, in that his behavior, environment and associations were injurious to his welfare and the welfare of others and also by reason of an act of voluntary manslaughter. After declaring him to be within the purview of the Juvenile Code, the court then continued the cause for disposition, pending the completion *7 of the social investigation. The formal entry on March 25, 1968, referred to the prior hearing and finding and then committed the minor.
Facile dispatch of the issue would indicate that we follow blindly In re Juvenile Delinquency Appeal, supra, and find that the adjudication of January 24, 1968, was a final, appealable judgment, thereby placing the filing of notice of appeal on April 29, 1968, beyond the time of 30 days provided in Section 211.261. Section 211.410, RSMo 1949, construed in that case to so hold, merely referred to "any final order or judgment" just as in our present juvenile appeal statute. But we do not believe this was the intent of the legislature. When the new act was written, it could very well have been phrased as was old Section 211.170, RSMo 1949, specifically providing an appeal from either a judgment of delinquency or a judgment of disposition. Instead that section, as well as the others, was repealed and the legislature passed Section 211.261 using general language. In construing the new section we must proceed on the theory that the general assembly intended something by the repeal of the old and the enactment of the new in place of the old sections. Darrah v. Foster, Mo., 355 S.W.2d 24, 30 [8].
To place our problem within the framework of the law, consideration must be given to the question of the nature of a juvenile proceeding. It is not criminal. State ex rel. Arbeiter v. Reagan, Mo., 427 S.W.2d 371. Neither is it a civil case in the constitutional appellate jurisdictional sense, since in that event, with the state being a party, we would have no jurisdiction and the case would have to be transferred to the supreme court. State v. Harold, 364 Mo. 1052, 271 S.W.2d 527, 530 [11]. Section 211.171(6) of the Juvenile Act says "The practice and procedure customary in proceedings in equity shall govern all proceedings in the juvenile court." Furthermore, we have held that a juvenile proceeding must be regarded as "partaking of the character" of a civil case. In re S____, Mo.App., 342 S.W.2d 277, 282 [6] (following In re C____, Mo.App., 314 S.W.2d 756, 760 [9]); see also In re J____, Mo.App., 356 S.W.2d 508, 509 [1]. And "the Rules of Civil Procedure apply, generally, to juvenile court proceedings." State ex rel. R.L.W. v. Billings, Mo., 451 S.W.2d 125, 127 (1970). And so, since we may also consider related statutes (Murrell v. Wolff, Mo., 408 S.W.2d 842, 850 [7]) or the construction placed upon the related parts of the general law (In re Dugan, Mo. App., 309 S.W.2d 137, 143 [12] ) we relate the problem to civil appeals.
The general rule on civil appeals requires the judgment to dispose of all parties and all issues in the case, leaving nothing for final determination before it is final and appealable. Elliott v. Harris, Mo., 423 S.W.2d 831, 832 [1]; Title Insurance Corporation of St. Louis v. United States, Mo.App., 432 S.W.2d 787, 789 [1]. Section 511.020 defines a judgment as the "final determination" of the rights of the parties in the action; and Section 512.020 authorizes appeals from any "final judgment" in the case by any party aggrieved. In the instant case we do not have a final judgment after the finding of January 24, 1968, because it did not dispose of the parties and all the issues. Disposition of the child awaited the hearing of March 25, 1968. Something was left for further determination. His future course of training, custody and control would be decided at the dispositional hearing.
We must arrive at the same conclusion after a brief reference to the procedures requisite to appeal in criminal cases. Until there is a sentence, there is no final, appealable judgment. An appeal before sentence is premature requiring that the submission on appeal be set aside, the case remanded, and the defendant be brought before the court for the proper pronouncement of sentence. State v. Jaeger, Mo., 394 S.W.2d 347, 352 [7]. We might add that since the decisions of the Supreme Court of the United States in Kent v. United States, *8 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84, and in In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, it cannot be denied that a child is entitled to the protection of a fair hearing and the right to counsel. Even more pertinent then is this reference of appellate procedure under the Juvenile Act to criminal procedure.
There are other substantial reasons for our interpretation. Rights of the parties must be determined and settled by the court before a judgment is final and appealable. Until the force of the law is manifest and the imposition of its power and authority is imminent, there is no reason to appeal. Once the court imposes a restraint of liberty, requires affirmative action, fixes an obligation, or prohibits an act, then, and only then, does a party know how his rights of person or property will be affected. It is then that he knows whether he wants to exercise his right to appeal. A finding of delinquency on one of the grounds set forth under Section 211.031 is a very necessary but impotent determination until the court decides what should be done to the child under Section 211.181. After this last decision the law springs into action, and even if the child is allowed to remain in his own home, he is placed under supervision subject to conditions which the court may require. His "rights" are finally determined. His "sentence" has been imposed. We hold, therefore, that until judgment is rendered in which some disposition is made of the child under Section 211.181, there is no final appealable judgment.
Having resolved this problem, we now pass to the second inquiry which concerns our jurisdiction. After the disposition of the child on March 25, 1968, a motion for new trial was filed April 8, 1968. This motion was denied April 11, 1968. Notice of appeal was then filed April 29, 1968. Eighteen days had elapsed after denial of the after-trial motion and thirty-five days after the judgment committing the child to the State Training School before the notice was filed. "Notice of appeal shall be filed within thirty days after the final judgment, order or decree has been entered * * *." (Section 211.261) Does this mean thirty days after the entry of the dispositional judgment, or thirty days after the denial of the motion for new trial?
The function of an after-trial motion in a court-tried case may be somewhat in doubt since it is not necessary in such a case; for there the issue on appeal is the propriety of the court's decision on the whole record. Russell v. Russell, Mo., 427 S.W.2d 471, 475 [1,2]; March v. Gersten-schlager, Mo., 436 S.W.2d 6, 7; Laurance M. Hyde, Appellate Review of Cases Tried by the Court Without a Jury, 26 J. of Mo. Bar, 71 (Feb. 1970). But it may properly be filed to obtain relief in the trial court and if filed postpones the finality of judgment until it is overruled or until ninety days after it is filed if there is no ruling on the motion. Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. (en banc) 1153, 200 S.W.2d 55, 63; Campbell Sixty-Six Express, Inc. v. Dalton, Mo., 378 S.W.2d 558, 559.
We have previously discussed the applicability of rules of civil practice as concerns appellate procedure and review in juvenile cases. Since Civil Rule 41.02, V.A. M.R. explicitly directs that the Rules of Civil Procedure shall govern practice and procedure in all actions of a civil nature, legal, equitable and special, and since it is the intent of the Supreme Court to bring into application in all civil proceedings its rules which are consistent with and not repugnant to them (State ex rel. R-1 School Dist. of Putnam County v. Ewing, Mo.App., 404 S.W.2d 433, 439 [9]), which includes juvenile proceedings (State ex rel. R. L. W. v. Billings, supra), and in order to avoid a confusing situation under the old procedure which caused parties to lose their rights of appeal because a motion for new trial had the effect of postponing finality in some types of cases and not in others. (Seabaugh's Dependents v. Garver Lumber Mfg. *9 Co., Mo., 200 S.W.2d 55, 64), we conclude that the finality of a judgment in a juvenile case is postponed by the filing of a motion for new trial. Furthermore, when the motion is ruled on or upon the expiration of ninety days without a ruling, appellant must then file his notice of appeal. It therefore follows that since the judgment of March 25, 1968, did not become final until the ruling of the court on the motion for new trial on April 11, 1968, a "final judgment" within the meaning of Section 211.261 was not entered on March 25, 1968. Appellant then had thirty days after April 11, 1968, within which to file notice of appeal. This is true because the legislature by that section allowed this time, and although the Constitution of 1945, Article V, Section 5, V.A. M.S., authorizes the Supreme Court to establish rules of practice, these rules may not change the laws relating to the right of appeal. Appeals are purely statutory, (State ex rel. Travelers Indemnity Co. v. Swink, Mo.App., 440 S.W.2d 152, 155 [4]), and must be taken within the time and in the manner provided by statute (Lucitt v. Toohey's Estate, 338 Mo. 343, 89 S.W.2d 662, 664 [5]). Courts may not enlarge the statutory period within which an appeal may be taken, (Hance v. Johnson, Stephens & Shinkle Shoe Co., Mo.App., 306 S.W.2d 80, 82 [2]), and neither may they shorten that time. This is a part of the legislative authority and since the legislature has set that time at thirty days in Section 211.261, which applies specifically to juvenile proceedings, the general restriction of time to ten days in Section 512.050 has no application here. A special statute dealing with procedure in a particular type of case controls over a general statute concerning civil procedure. First National Bank of Kansas City v. Kavorinos, Mo., 283 S.W.2d 452, 456 [2]. The rule of general application of the Rules of Civil Procedure announced in State v. Ewing, supra, does not apply here as to time because this involves an area of the law where the authority of the legislature is pre-eminent and the legislature has spoken.
After such a lengthy and, at times, tedious determination of the applicability of statutes and rules of procedure, we arrive at the conclusion that we do have jurisdiction to hear this appeal. We now proceed to the merits. As previously pointed out, the sole issue raised on appeal is whether there was sufficient substantial evidence to warrant the court in finding that the child had committed an act of voluntary manslaughter. Based upon the facts most favorable to sustain the court's judgment as revealed by the record, (State v. Ross, Mo., 371 S.W.2d 224, 225 [2]), we are of the opinion that there were sufficient facts which support the judgment of culpability.
The deceased, aged twenty-one years, became incensed over some remark which he believed had been made by the juvenile when the deceased and his female companion had passed on the street. At 2:30 to 3 o'clock a. m., on October 28, 1967, the deceased in the company of four other young men riding in two automobiles returned to the street where the juvenile and at least two other young men were sitting on the steps of a residence talking. The recounting of the events that occurred after the automobiles stopped varied from witness to witness, but the court could have found and inferred that the juvenile came up to the automobile in which the deceased was seated, reached in the window and struck him. Deceased got out of the car and the juvenile again struck him. After fisticuffs and wrestling with the appearance of a ball bat in one group and a stick and a crowbar in the other, the juvenile picked up a brick, threw it and hit the deceased on the lower part of the skull behind the right ear. With that the deceased shook his head, told his brother to get in the car, and then jumped on the hood of the car. After riding about one-half block the car was stopped. Deceased got off the front of the car, looked back to the scene of the altercation and collapsed. He was having trouble breathing and seemed to have no life signs when the police officers *10 arrived about 4:00 o'clock a. m. He was taken to the City Hospital where he was pronounced dead. One of the officers noticed a bruise behind the right ear, running down below the right shoulder blade. Following a post mortem autopsy, one of the coroner's physicians stated that the examination revealed a hemorrhage surrounding the blood vessels of the brain which in turn had caused a collapse of the lungs. He noted a contusion over the apex of the right shoulder which he ascribed to trauma but did not find any evidence of trauma on the head. Although admitting that such a hemorrhage could happen to any person without prior trauma, he testified in answer to a hypothetical question that he thought the history of the fight and being struck could have brought on the problem which resulted in death. From such evidence, the trier of facts could infer causation and responsible agency. State v. Sykes, Mo., 372 S.W.2d 24, 26 [5] (reaffirmed 436 S.W.2d 32, 34 [3]); State v. Morris, Mo., 307 S.W. 2d 667, 673 [6, 7]; State v. Frazier, 339 Mo. 966, 98 S.W.2d 707, 712 [5].
Appellant overlooks the portion of the judgment of the court which found the child's behavior, environment and associations of the child to be injurious to his welfare and the welfare of others. Under Subsection 1(c) of Section 211.031, this is also a basis for the court exercising jurisdiction over the child. Substantial support for this finding can be found in the behavior of the juvenile on the early morning of October 28, 1967, without relying on other problems of behavior and environment experienced prior to this date.
The judgment is affirmed.
PER CURIAM:
The foregoing opinion by WEIER, C., is adopted as the opinion of this Court. Accordingly, the judgment is affirmed.
WOLFE, P. J., and BRADY and DOWD, JJ., concur.