### In re Kenneth GREBE.

### No. 25396.

Kansas City Court of Appeals, Missouri.

April 5, 1971.

Ike Skelton, Jr., Lexington, for Kenneth Grebe.

No appearance for respondent.

HOWARD, Judge.

This is an appeal from the juvenile division of the circuit court of Johnson County, Missouri. The juvenile contends that the evidence is insufficient to support the findings and order of the court. No brief has been filed on behalf of the respondent although this court extended the time for filing and granted permission to file a typewritten brief. We are, therefore, without the benefit of any argument contrary to that put forward by the juvenile.

This proceeding is an aftermath of the killing of Hugh Martin on July 7, 1967. The juvenile, Kenneth Grebe, was picked up on July 7th by the sheriff in his investigation of the killing. The next day, July 8, 1967, the juvenile court of Johnson County, Missouri, issued its order directing that Kenneth be held for investigation of the killing of Hugh Martin.

On July 10, 1967, the court entered its order authorizing the juvenile officer to file a petition against Kenneth. This petition was filed the same day alleging (1) that Kenneth's behavior, environment or associations were injurious to his welfare and to the welfare of others, and (2) that Kenneth stabbed Hugh Martin, who died as a result of his wounds.

On August 7, 1967, the juvenile filed a motion for release to the custody of his father, or in the alternative, for release on bail. The motion was heard the same day and at the conclusion of this hearing, the court on its own motion committed Kenneth to the Western Missouri Mental Health Center for examination, diagnosis and evaluation. The order specified that the written report from the mental health center should be confidential until the court ruled otherwise. This report (if any was made) is not again referred to in the record. The order further directed that upon completion of the examination, the health center should release Kenneth to his father who was directed to place Kenneth with an aunt and uncle at Fairfax, Missouri, and the father was directed to have Kenneth before the court when ordered.

On August 4, 1969, a hearing was held in juvenile court on the petition filed on July 10, 1967. At the conclusion of this hearing, the court, by oral statement, found that the juvenile, Kenneth Grebe, was 13 years old at the time of the killing and could not be prosecuted as an adult. From the fact of the stabbing alone (as far as the record discloses), the court found that there had been a breakdown of parental responsibility and that Kenneth was "sick socially". He concluded that no good would result from removing Kenneth from the custody of his aunt and uncle.

The formal order of the court found that Kenneth was 13 years old at the time of the killing and that he willfully and intentionally stabbed and wounded Hugh Martin with a knife and that as a result thereof, Hugh Martin died; that in so doing, defendant violated the laws of this state and was "delinquent" and in need of care and treatment under the supervision of the court; that Kenneth's behavior and environment were injurious to his welfare and the welfare of others and that he came within the purview of Section 211.031, RSMo.; that Kenneth's best interest required that his custody be removed from his parents and placed with his aunt and uncle at Fairfax, Missouri, under the supervision of the juvenile officer.

This episode involved Hugh Martin (the deceased) and his son, Larry Martin (age not disclosed in the record) on one side, and the juvenile, Kenneth Grebe, his mother, Mrs. Ruth Grebe, and the Grebe dog on the other side. Larry Martin was the only eye witness who testified. The juvenile did not testify and neither did his mother although she was present in court.

From the testimony of Larry Martin, the facts surrounding the killing appear to be as follows. The Grebes owned land adjoining a church and the house appears to be near the boundary between the church land and the Grebe land. There was a dispute between the Grebes and the church concerning this boundary. A fence is referred to in the testimony but its location does not appear from the record. No distances are given in the testimony and the lay of the land and the exact relationship between the church and the Grebe house and the fence does not appear.

Larry Martin and his father, Hugh, arrived at the church between 7:30 and 8:00 A.M., on July 7, 1967, for the purpose of mowing the grass in the yard back of the church. They brought with them two mowers. The son used a riding mower and the father used a push mower. They did not go to the Grebes and inform them that they were going to mow the yard. When they arrived, Larry did not see anyone around the Grebe house. As soon as he started to mow, he saw the Grebe dog in the yard. Shortly thereafter, he saw Mrs. Grebe on the front porch of the house and some five to ten minutes after they ar-

rived, he saw Kenneth Grebe (the juvenile) in front of his garage. Kenneth threw a hard object at Larry (Larry could not better identify it). "In a very short time" Kenneth came to the mower and kicked at Larry five to seven times while Larry sat on the riding mower. His foot hit Larry once in the arm. No words were spoken. Larry then turned the mower and moved away toward where the father was. Larry and his father left their mowers and walked toward Kenneth. Mrs. Grebe and the dog were then with Kenneth. Larry estimated that they walked from 30 to 70 feet toward the place where Kenneth was. He could see that Kenneth had a knife stuck in his belt. Larry and Hugh each had a piece of rubber hose in his pocket. As Larry and his father approached to within four to five feet of Kenneth, Kenneth drew his knife and waved it back and forth in long arcs in front of him. No words were spoken. They were then near the fence.

The dog came toward Larry who took a short length of rubber hose from his pocket and hit the dog. Larry stated: "Before I could straighten up, Kenneth stabbed me with a knife." He was stabbed only one time in the groin. Kenneth then "moved away" and the dog grabbed Larry's right arm. Larry hit the dog with the rubber hose and got loose from the dog.

Sometime before Larry was stabbed, he heard somebody say "Stay off this property".

After getting loose from the dog, Larry turned and saw that "Mrs. Grebe had Daddy back at the fence, had him back against the fence and had one hand on each side of his neck and was * * *." He later testified that Mrs. Grebe "was pushing him [Hugh] against the fence and moving up and down pushing him along the fence." Mrs. Grebe did not have a weapon. Larry did not see Kenneth at this time. Larry took a step and hit Mrs. Grebe with the hose and "she moved away from Daddy". At that time Kenneth was back of Larry—

a little to the north. "We were pretty close together." Kenneth was just standing there.

Larry looked at his father and did not see any blood. Then Mrs. Grebe got behind Larry and pulled him down backward and he caught himself with his hands. Larry got up and turned around and saw that Mrs. Grebe had Hugh Martin and was pulling him down backwards the same as she had done Larry. She did not have a weapon. Larry did not know where Kenneth was at that time. As soon as Hugh hit the ground, the dog jumped on his stomach with his mouth toward his throat. Larry hit the dog with the hose and the dog got off Hugh.

Hugh got to his feet and Larry saw that he had a lot of blood on his clothes. When Hugh got up Larry did not know where Kenneth was—"They left the scene". Hugh got to his feet "and a short time after we left the scene." Hugh had a piece of rubber hose in his hand as they walked away.

Larry testified that he did not see Hugh strike Kenneth and on two separate occasions testified that he did not see Kenneth stab Hugh. Larry saw his father strike Mrs. Grebe. Larry did not strike Kenneth.

Larry and his father then went to a tree near the church; an ambulance came and took them to the hospital. Hugh Martin was dead on arrival. Larry was in the hospital five to six days (apparently for treatment of the stab wound but this is not specified by the evidence).

Kenneth Grebe was the only one Larry saw with a knife during this melee. At that time Kenneth was five feet tall and weighed 90–92 pounds.

Medical evidence established that Hugh Martin died of a stab wound which entered through the wall of the abdomen, cut the liver, severed the big vein that brings the blood from the lower part of the body back to the heart; cut another vein that

joins the big vein at that point and cut into the vertebrae behind or beside the vein. It was approximately five inches from the wall of the abdomen to the deepest penetration of the wound. Hugh Martin also had cuts on his arm and shoulder and wounds on his hands and arms apparently made by dog bites.

There is no other evidence concerning the facts of the occurrence contained in this record. The record shows that during his stay with his aunt and uncle near Fairfax, Missouri, Kenneth's school work improved; he had no disciplinary problems in school and got along well with his schoolmates; he got along well in the neighborhood, obeyed his aunt and uncle, and they had no disciplinary problems with him. He is described as a quiet, retiring boy but he participated in school activities and was friendly with his schoolmates.

Kenneth's father testified that he now lived on a farm near Oak Grove in Jackson County, Missouri, with his wife and daughter who was younger than Kenneth. He testified generally as to his home situation and that he was desirous of having Kenneth returned to his custody. The uncle indicated that he was willing to have Kenneth continue to live in his home if the court should so decide. The aunt was in the hospital and did not testify.

██ We must view the evidence in the light most favorable to the determination of the trial court. See State v. Ross, Mo., 371 S.W.2d 224, and In re In Interest of T——— G———, Mo.App., 455 S.W. 2d 3. Since the record contains no direct testimony that Kenneth wielded the knife that caused Hugh Martin's death, we must determine whether or not the evidence taken as a whole will support the factual inference that Kenneth did, in fact, stab Hugh Martin. Since the evidence on this issue is circumstantial rather than direct, all of the circumstances must be consistent with each other; consistent with the inference of guilt and inconsistent with any reasonable theory of innocence. State v. Jones, 363 Mo. 998, 255 S.W.2d 801; State v. Worley, Mo., 353 S.W.2d 589; and State v. Ramsey, Mo., 368 S.W.2d 413. The judgment below cannot be sustained on the basis of suspicion or speculation. State v. Castaldi, Mo., 386 S.W.2d 392; and State v. Greer, Mo.App., 311 S.W.2d 49.

Larry Martin testified that Kenneth's mother did not have a weapon. However, this testimony goes no further than to demonstrate that Larry did not see Kenneth's mother in possession of a weapon. It does not demonstrate that she did not, in fact, have possession of a weapon.

Under all of the evidence in the record, it would be as reasonable to infer that Kenneth's mother stabbed Hugh Martin with a knife which was not seen by Larry as it would be to infer that Kenneth stabbed Hugh Martin, when the evidence does not place Kenneth within striking distance of Hugh at any time during the encounter. In this connection it will be remembered that the mother grappled with Hugh on at least two occasions during the melee.

██ We, therefore, conclude that the evidence is insufficient to support the conclusion of the trial court that Kenneth stabbed Hugh. This conclusion is central and basic to the determination of the trial court. The other conclusions and orders of the trial court flowed from this factual finding and without such finding, the other conclusions and orders are without foundation. It, therefore, follows that the judgment of the trial court must be reversed.

However, the evidence would support a finding that Kenneth violated the state law in other respects and, although undeveloped in this record, it appears to be very probable that Kenneth's best interests require that he remain in the home of his aunt and uncle where he is apparently doing well rather than be returned to the home of his parents where he was at the time of the occurrence here in question.

For this reason, further proceedings in the trial court are required.

The judgment below is reversed and the cause remanded for further proceedings.

All concur.