Marvin MILLER, Relator,

v.

The Honorable Robert G. RUSSELL, Circuit Judge, Division II, Seventeenth Judicial Circuit, Warrensburg, Missouri, Respondent.

No. WD 30857.

Missouri Court of Appeals, Western District.

Dec. 31, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 4, 1980.

Application to Transfer Denied March 11, 1980.

William J. Cason, Michael X. Edgett, Fred R. Bunch, Clinton, for relator.

John C. Milholland, Harrisonville, for respondent.

Before WASSERSTROM, C. J., and SHANGLER, PRITCHARD, SWOFFORD, SOMERVILLE, CLARK and MANFORD, JJ.

CLARK, Judge.

In this action, relator Miller seeks to prohibit respondent judge from adjudicating the paternity of an abused child in the custody of the Missouri Division of Family Services under a temporary order for foster home placement. At issue is the authority and jurisdiction of the juvenile division of the circuit court under Section 211.241,[1] RSMo 1978[2] to determine paternity incident to assessment of financial responsibility for support of a child.

This case originated when the child, born January 24, 1978, was brought to the attention of the court on the petition of the juvenile officer filed after a hospital emergency room admission disclosed severe injuries to the child without adequate explanation of their origin. At the initial hearing, inquiry of the deputy juvenile officer revealed that the father of the child, born out of wedlock, was alleged to be Miller, a contention later confirmed by the mother at a subsequent hearing.

The court assumed jurisdiction over the child, appointed a guardian ad litem and ordered a summons issued to Miller directing him to appear at a specified date when the cause as to the child would be heard. Miller appeared in response to the summons and unsuccessfully challenged by motion the jurisdiction of the court to enter any orders adjudicating or dependent upon the paternity of the child. Implicit in Miller's contention is a denial that he is the father, an issue which the trial court, sitting as the juvenile division, proposes to resolve.

Preliminary rule in prohibition was issued on Miller's petition to permit examination of the question, a matter apparently of first impression in Missouri.

Miller contends (a) that adjudication of paternity is in excess of the "juvenile court's" jurisdiction because not among the subjects expressly provided by statute to be within the purview of the court sitting as the juvenile division (b) that contribution by the father to the support of an illegitimate child may not be enforced under Section 211.241 because, by definition of "parent" under Section 211.021, that obligation rests only on the mother and (c) adjudication of paternity by the juvenile division would deny Miller his right to a jury trial in contravention of Article I, Section 22(a), Constitution of Missouri, 1945.

No contest is presented here as to the jurisdiction of the juvenile court over the child nor is any issue taken with respondent judge's orders finding the child to be in need of the court's services and placing the child in foster care. It is therefore unnecessary to describe the events which preceded the child's placement.

1. "211.241. Court orders to parents for support of children, procedure—county to support, when—1. When the juvenile court finds a child to be within the purview of applicable provisions of section 211.031 it may in the same or subsequent proceedings, either on its own motion or upon the application of any person, institution or agency having the custody of such child, proceed to inquire into the ability of the parent of the child to support it or to contribute to its support. If the parent does not voluntarily appear for the proceeding, he shall be summoned in the same manner as in civil cases and the summons in the case may issue to any county of the state.

"2. If the court finds that the parent is able to support the child or to contribute to its support, the court may enter an order requiring the parent to support the child or to contribute to its support and to pay the costs of collecting the judgment."

2. All references are to RSMo 1978 unless otherwise indicated.

Issuance of the summons to Miller presaging his first appearance in the case is, by reason of the absence from the record here of any application or order, assumed to have been on the court's own initiative, after identity of the putative father was disclosed in testimony at an earlier preliminary hearing. The record suggests, and this opinion assumes, that the child's mother has adopted a passive role with respect to procuring judicial determination of paternity and that the endeavor of the trial court was upon its own motion essentially to relieve a public burden for the child's expenses during the temporary placement.

At the outset, it is appropriate to consider judicial precedent as to rights of illegitimate children and the assessment of responsibility for their welfare. At common law, the putative father owed no duty of support to his illegitimate child. *State v. White*, 363 Mo. 83, 248 S.W.2d 841 (1952). Present-day concepts rejecting the investiture of stigma upon the innocent product of parental indiscretion have taken the form of legitimation statutes in many states where the right of the child to paternal support is defined and judicial procedures for determination and enforcement of rights are fashioned. Missouri, however, has never adopted any statute on the subject. By failing to announce a contrary legislative intent, the General Assembly of Missouri has therefore expressed the public policy of this state to be acceptance of the common law principle that no duty devolves upon a father to support his illegitimate offspring. *Heembrock v. Stevenson*, 387 S.W.2d 263 (Mo. App.1965). Missouri is to this date among the few states which do not have filiation statutes.

■ The absence of a statutory remedy in Missouri available to enforce rights of illegitimate children was the occasion for judicial intervention in 1968 following the decisions of the United States Supreme Court in *Levy v. Louisiana*, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 and *Glona v. American Guarantee and Liability Insurance Company, et al.*, 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441, decided that year.

Those cases held that state discrimination between legitimate and illegitimate children was prohibited by the Fourteenth Amendment. There followed the decision in *R— v. R—*, 431 S.W.2d 152 (Mo.1968) which held that the vehicle of a declaratory judgment action could be employed in Missouri by or on behalf of a child to obtain declaration of his paternity and to compel support from the father despite the lack of any remedy by statute. The former common law rule creating a separate class of illegitimate children with diminished rights has been firmly removed and no longer exists in this state. *S— v. W—*, 514 S.W.2d 848 (Mo. App.1974).

■ Recognizing then that potential civil liability for support is now a legally established and concomitant obligation incurred by one who fathers an illegitimate child, the issue posed in this case narrows to one of forum selection within the court which has acquired jurisdiction over the subject matter of the case. That such jurisdiction lies in the Seventeenth Judicial Circuit is beyond dispute by reason of the presence and residence both of the child and of Miller in Johnson County. *In re M. W.*, 504 S.W.2d 189 (Mo.App.1973).

Without disputing subject matter jurisdiction in the circuit court as such, Miller argues that the "juvenile court" is a court of limited jurisdiction possessing only those powers and dealing only with those subjects specifically appearing in the statutes pertaining to such courts. He further notes that the statutes applicable to juvenile cases, and particularly Section 211.241, contain no mandate of authority for adjudication of paternity and, hence, that the subject is beyond the latitude of inquiry for respondent when sitting as judge of the juvenile division.

No contention is here made that adjudication of the subject child's paternity could not be accomplished by a declaratory judgment action, the proceeding authorized under *R— v. R—, supra*. Jurisdiction of and venue for such a suit would, by reason of the residence of the parties, be in the Circuit Court of Johnson County. Miller's con-

tention therefore challenges the authority of respondent judge to hear and decide the paternity question, not because the general jurisdiction of the circuit court does not encompass the subject, but because respondent when presiding in the juvenile division is contended to be circumscribed by more restrictive constraints.

Facially, it would appear that Miller's argument is supported by the decision in *In Interest of M. K. R.*, 515 S.W.2d 467 (Mo. banc 1974). There, the circuit judge sitting in the juvenile division had authorized surgical sterilization of a mentally deficient child on the petition of the natural mother and with the consent of the father. Opposition was lodged by the appointed guardian ad litem. The court held that the juvenile court is not a court of general jurisdiction and possesses only those powers expressly conferred by the juvenile code. Finding no provision in the code dealing with sterilization, the court found the order to be invalid. The opinion, moreover, included the following statement: "Nor for that matter do we find any constitutional or statutory provision empowering any court in this state to order the involuntary sterilization of any person."

A significant feature which distinguishes the case of *M. K. R.* from the case at bar is the fact that the proposed sterilization of the minor was in no way incident to performance of any recognized or statutorily designated function of the court under the juvenile code. Jurisdiction of the juvenile court had in *M. K. R.* been asserted solely for the purpose of clothing the sterilization by parental consent with the insulation of a court order. Allegations of benefit to the minor were less than predominant when contrasted with the furtherance of a state interest in eliminating prospective birth of children forecast to inherit the mother's traits of mental retardation and who were predictably to become wards of the state because of the mother's inability to provide for their care.

■ In the subject case, initial jurisdiction of the child was acquired because the child was found to be in need of the protec-

tive services of the court. Such services were implemented by placing the child under temporary foster care. The propriety of such action and the assumption of jurisdiction over the child are not here questioned, nor may they be on the admitted but unexplained injuries which the child suffered. This jurisdiction under the juvenile code is both original and exclusive. Section 211.031. Once the court's juvenile division has assumed jurisdiction over the child, Section 211.241 authorizes the court to summon the child's parent for inquiry as to financial resources and to order appropriate contribution to the child's support. Of necessity, this function may only be performed if the court by implication is also authorized under the statute to identify as a parent the person against whom the order for support is to be entered and enforced.

Miller's argument, if accepted, would effectively emasculate the statute. If by failure of the legislature to include expressly in the statute a mandate of authority in the juvenile division to ascertain the identity of parents, a deficiency of equal import in the cases of both parents and in the cases of children born both within and without ceremonial wedlock, the court is then dependent on voluntary acknowledgment of responsibility by those sought to be charged with the financial obligation. One seeking to avoid that responsibility would need only to deny parentage to raise the issue and irrespective of proof, documentary or otherwise, the court would be obliged to abandon assessment of any support responsibility.

■ Neither the case of *M. K. R.* nor acceptable statutory construction can support such a result. Rather, it must be and is held that the authority of Section 211.241 to require and enforce contribution by a parent to the support of a child under the jurisdiction of the court pursuant to Section 211.031 includes by implication the concurrent authority to adjudicate paternity. The general statements contained in *M. K. R.* limiting the powers of the court when sitting as the juvenile division to those expressly conferred by statute are not in conflict with this result because that opinion

was expressly limited to the narrow question presented in the case and was responsive to a contention that Section 211.171(6) gave the juvenile court the powers of a court of equity.

■ It must, of course, be conceded that a declaratory judgment action could be pursued for the purpose of adjudicating the issue of paternity which respondent judge now intends to resolve. No suggestion is made by the parties that such an action is contemplated or is pending nor, in the practical realities to be inferred from this record, does there appear any current interest in the subject beyond the initiative taken by the court in its function while sitting as the juvenile division. At best, the jurisdiction of the circuit court in such a declaratory judgment suit, if filed, would be concurrent. Here, the juvenile division first validly assumed jurisdiction with respect to the child and thereafter proceeds to a conclusion of the matter to the exclusion of any other court of concurrent jurisdiction. *State ex rel. McCarty v. Kimberlin*, 508 S.W.2d 196, 199 (Mo.App.1974) and cases there cited.

Miller next argues that he is immune from assessment of support contribution under the juvenile code even though found to be the child's natural father and financially able to provide support because the word "parent" used in Section 211.241, authorizing assessment of contribution to support, is elsewhere in the juvenile code in Section 211.021(5) defined as the mother if the child is illegitimate.

■ If it be assumed that the statutory definition of "parent" cited above was a legislative expression of public policy in Missouri denying to an illegitimate child the right of support by his natural father, all in accordance with the inference of intent prior to 1968 to follow the common law principle, that policy must fail on the same ground enunciated in *R— v. R—, supra.* The right to support must be extended equally to both legitimate and illegitimate children. Any state policy to the contrary is constitutionally impermissible.

". . . a State may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally. We therefore hold that once a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother. For a State to do so is 'illogical and unjust.'" *Gomez v. Perez*, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973).

On this authority, it follows that enforcement of a support obligation under Section 211.241 owed to the legitimate child from both parents may not be limited in the case of the illegitimate child to exclude accountability by the father. Any statutory provision or construction treating legitimate and illegitimate children unequally must fall as violative of the constitutional right to equal protection of the state's laws. Indeed, this deficiency in the definition of "parent" found in Section 211.021(5) and drawn from identical language in the same section of RSMo 1969 was abrogated by Rule 110.-05a(15) adopted December 9, 1975, effective August 1, 1976. The rule changes the definition of "parent" for purpose of practice and procedure in the juvenile courts to eliminate reference to legitimacy of birth. Parents are simply the natural or adoptive parents of the child. Comment appended to the rule indicates the definition change to be responsive to the decision in *R— v. R—, supra.*

Miller contends, however, that if Rule 110.05a(15) operated to supersede the language of the 1969 statute, Section 211.021 was revised during the 1978 session of the legislature and must control as the most recent enactment on the subject. In the version of the statute effective January 2, 1979, the definition of "juvenile court" was changed to comply with the three-tier unitary court system authorized by the revised Article V of the Missouri Constitution. The original definition of "parent" remained unchanged, preserving the distinction as to parents of legitimate and illegitimate chil-

dren. Miller suggests that by its readoption of the discriminatory language exempting the fathers of illegitimate children, the legislature by implication intended to efface Rule 110.05a(15).

■ The argument as to supremacy of the most recent re-enactment of Section 211.241 fails on two counts. While the legislature concededly has the authority to annul or amend court rules establishing practice and procedure for the courts, such may be accomplished only by a law limited to that purpose. Mo.Const. Art. V, § 5. Examination of H.B. 1634, which included the revision of Section 211.241, discloses that the legislation addressed problems incident to the revision in court structure accomplished by the constitutional amendment adopted August 3, 1976. The enactment does not purport to be a law adopted for the limited purpose of annulling Rule 110.-05a(15), and therefore fails of this purpose because not in compliance with the constitutional requirement. *State v. Scott*, 387 S.W.2d 539, 543 (Mo. banc 1965).

■ Additionally, even were it assumed that this legislative intent is in some manner expressed, and that the legislature thereby reaffirmed the earlier policy of exonerating from liability the fathers of illegitimate children, such policy must be overturned on constitutional grounds. The court does not defer to the legislature in the face of violation of constitutional rights to equal protection. With or without implementing legislation or, in contravention of opposing enactments, the court must follow and enforce constitutional rights of illegitimate children. Krause, Legitimate and Illegitimate Offspring of *Levy v. Louisiana* —First Decisions on Equal Protection and Paternity, 36 Univ. of Chicago L.Rev. 338 (1969). Such was the genesis of Rule 110.-05a(15) which survives the more recently adopted statutory provision.

Finally, Miller contends that if respondent judge proceeds to adjudication of the issue of paternity and assesses financial responsibility for support of the child in accordance with the determination of paternity, Miller will be deprived of a right to a jury trial. This he grounds on an assertion that the right to a jury trial is his by virtue of the Missouri Constitution, Art. V, § 5 and Art. I, § 22A.

■ Disposition of this issue could readily be made by reference to the record in the case which reveals no request by Miller that a jury be called nor, consequently, any refusal by respondent judge to honor that asserted right. No error therefore appears, even were the right to a jury trial conceded. *State v. Campbell*, 325 Mo. 561, 32 S.W.2d 69 (1930). The point is flawed because based on an unconfirmed assumption.

Also to be discarded is any implication that respondent judge by invoking the informality of procedure authorized by Section 211.171 proposes to adjudicate the fact issues without affording Miller pretrial procedures available in normal processing of civil cases. In fact, the record of the hearing conducted February 6, 1979, before Miller's motion challenging the jurisdiction of the court was filed, discloses that tentative arrangements were then made to provide discovery including the deposition and blood typing of the child's mother.

The significance of the issue here, entitlement of a putative father to a jury trial on adjudication of paternity before the juvenile division of the circuit court, warrants examination of the question on the merits despite the availability of alternative disposition as indicated above. For this purpose, it will therefore be postulated that a jury demand by Miller would be denied.

The right to a trial by jury under the provisions of the present Missouri Constitution, Art. I, § 22(a) is limited to preservation of such right "as heretofore enjoyed." This language has been interpreted to mean that jury trials are preserved as they existed of right at the time of adoption of the Constitution.

"In order to determine whether the case at bar comes within the meaning of [Sec. 22(a)], we must first determine what the issue tendered by the pleadings is, and, after doing so, we must then ascertain how that issue was triable be-

fore the adoption of that constitutional provision; if by jury, then either party is entitled to a trial of that issue by a jury, regardless of any statutory provision, but if it was not triable by jury prior to that time, then the Constitution does not govern * * *." *Lee v. Conran*, 213 Mo. 404, 412, 111 S.W. 1151, 1153 (1908).

The constitutional guarantee of the right to jury trial has remained the same through the four Missouri constitutions commencing with the Constitution of 1820. Thus, the right to jury trial protected by the present constitution is that which existed at common law before the adoption of the first constitution. Neither it nor succeeding constitutions have created new rights to jury trial but have merely preserved from legislative and judicial encroachment that which the people previously enjoyed. The fundamental intendment of that provision in the constitution is to place beyond the reach of hostile legislation the right of trial by jury as existing at common law. *State v. Withrow*, 133 Mo. 500, 36 S.W. 43 (1896).

From previous comment in this opinion regarding the disability of illegitimate children at common law and the absence of any liability imposed on the putative father for support, it is apparent that no common law right to a jury trial existed. This follows for the reason that the right of the illegitimate child as earlier discussed above is of recent origin and in fact was not recognized until after adoption of the present Missouri Constitution of 1945. Miller's claim that prospective trial of paternity and the related support obligation before the juvenile division without a. jury runs afoul of a constitutional right is unfounded.

Of course, the right to jury trial is not exclusively determined by constitutional provisions or common law practice. These concepts merely serve to assure minimum rights. Both by statutes and by judicial interpretation, jury trials have been made available in expanded areas beyond those protected by the constitutional guarantee. Thus, Section 527.090 establishes the procedure for declaratory judgment actions and requires that issues of fact be determined in the same manner as in other civil actions. This includes the right to trial by jury. *Durwood v. Dubinsky*, 291 S.W.2d 909 (Mo. 1956).

Miller argues, on the authority of *R̲ v. R̲*, supra, that declaratory judgment is an appropriate vehicle for adjudication of paternity and since he would be entitled to a jury were the question posed in that context, he is deprived of substantive and procedural rights if the same issue is tried before the juvenile division without a jury. No citations of authority are supplied to support this proposition except cases from other states, notably Arkansas, Indiana and Illinois. These cases have no relevance to Miller's argument here because they are based on filiation statutes creating special causes of action in those states and defining procedures to be followed.

The mere fact that were Miller or some person on behalf of the child to have commenced a declaratory judgment action to determine those issues now before respondent judge and thereby have established a cause and a forum in which a jury would decide disputed questions of fact does not enlarge Miller's rights in this case nor diminish the authority of the juvenile division to proceed in the exercise of responsibility to the child under Section 211.241. Of similar import are proceedings for dissolution of marriage in which paternity does on occasion present a fact issue incident to adjudication of custody and support. The availability of a declaratory judgment suit to decide disputed paternity does not thereby engraft upon a divorce action, otherwise cognizable by the court without a jury, the requirement that a jury be provided to decide the paternity issue.

The suggested enlargement of rights to jury trials in different proceedings by analogy to declaratory judgment suits fails for the reason that absent a constitutional right, the entitlement to a jury is wholly dependent on the provisions of the statute. For the reasons previously delineated in this opinion, neither the constitution

nor the juvenile code directly or indirectly suggest that a right to jury trial is implicit in the enforcement under Section 211.241 of the parents' obligation to contribute to the support of the child.

The preliminary writ of prohibition is quashed.

All concur.