**In the Interest of D.T. and L.T.; Respondents,**

**Joanna Smith, Defendant,**

**and**

**Richard Tolbert, Appellant,**

**v.**

**Juvenile Officer, Respondent.**

**No. WD 66650.**

Missouri Court of Appeals,
Western District.

Jan. 29, 2008.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 4, 2008.

Application for Transfer Denied
April 15, 2008.

Richard C. Tolbert, Kansas City, MO, Acting Pro Se, appellant.

Pamela S. Deforest, Kansas City, MO; for respondent, Juvenile Officer.

Mary S. Mann; for respondent, L.J.T.

Laurie V. Snell, Kansas City, MO, for defendant.

Before LISA WHITE HARDWICK, P.J., JAMES M. SMART, Jr., and JAMES EDWARD WELSH, JJ.

JAMES EDWARD WELSH, Judge.

Richard Tolbert appeals the circuit court's judgment denying his request to remain a party and be considered for kinship placement. The circuit court found that it was not in the best interests of the children for Tolbert to remain a party and subsequently discharged him from this case. Tolbert asserts the circuit court erred on the following six points: (1) in ordering a paternity test of Tolbert; (2) in dismissing Tolbert as a party to the case; (3) in not giving Tolbert a hearing or trial on the validity of the seizure of the children; (4) in its assessment of Tolbert's knowledge of the drug issues of the children's mother; (5) in allowing Tolbert's appointed counsel to withdraw before his appeal was perfected; and (6) in confusing Tolbert with the biological father of the children's older sister. We affirm.

Twin boys D.T. and L.T. were born March 31, 2005. Their mother was Joanna Smith, and she advised Tolbert that he was their father. Mother and Tolbert had

known each other for five years but were not in a committed relationship. They were not married. Mother lived with Tolbert off and on and came and went as she pleased. Mother had an older child that had been born at a time when mother and Tolbert had been residing together. She named a different man as father of that child. The older child had been born drug exposed and was taken into the custody of the juvenile court prior to her release from the hospital. That child remains under the jurisdiction of the juvenile court.

When the twins were able to leave the hospital, they were also taken into judicial custody and placed with the children's division after a protective custody hearing. The twins were taken into protective custody due to mother's alleged history of chemical dependency, particularly to cocaine, which would place the children at risk if they remained in mother's custody. At the protective custody hearing, the court indicated the necessity to determine paternity of the boys.

Mother, Tolbert, and the twins were each summoned to appear at the adjudication hearing. At that hearing, both mother and Tolbert appeared in person and were represented by appointed counsel. The twins appeared by their guardian ad litem. Mother stipulated that the twins were without proper care, custody, and support because of her cocaine addiction, and both mother and Tolbert stipulated that paternity had not yet been established. Based upon these stipulations, the court assumed jurisdiction and proceeded directly into the dispositional hearing. All agreed to the disposition recommended by the Juvenile Officer and the children's division. The court entered its order placing the twins in the custody of the children's division for foster care placement. Mother was to enter and successfully complete the family court drug program. The chil-

dren's division was ordered to see that paternity tests were completed. Tolbert was awarded some supervised and some unsupervised visitation with the boys.

The court conducted a review hearing during which the court was advised that paternity testing had eliminated Tolbert as the biological father of the twins. The results of the testing were admitted into evidence. Tolbert does not contest the results. The court was also advised that mother had been unsuccessful in the family drug court and was then in prison. The court terminated mother from the family drug court. Apparently, Tolbert moved to remain a party and function as a kinship placement for the twins because the circuit court heard evidence to that effect over two days. No written motion appears in the legal file and no oral motion could be located in the transcript, but Tolbert himself did entreat the court to allow him to maintain a relationship with the boys. At the conclusion of the hearing on the motion, the circuit court found Tolbert an inappropriate placement for the children and discharged him as a party. Tolbert appeals pro se. The Juvenile Officer claims Tolbert is without standing to appeal.

■ The Juvenile Officer moves the court to dismiss this appeal because Tolbert lacks standing. The Juvenile Officer cites the court to section 211.261, RSMo 2000, which provides:

An appeal shall be allowed to the child from any final judgment, order or decree made under the provisions of this chapter and may be taken on the part of the child by its parent, guardian, legal custodian, spouse, relative or next friend. An appeal shall be allowed to a parent from any final judgment, order or decree made under the provisions of this chapter which adversely affects him. An appeal shall be allowed to the juve-

nile officer from any final judgment, order or decree made under this chapter. . . .

The Juvenile Officer correctly observes that the circuit court has determined that Tolbert is not a parent of the twins. In fact, paternity testing has excluded Tolbert as their father. Tolbert does not contest the finding of the court or the accuracy of the paternity testing. It is apparent that Tolbert lacks standing under section 211.261. If Tolbert's standing must be found exclusively from within the juvenile code, the motion to dismiss must be sustained.

We must, however, also consider whether or not Tolbert may have standing to appeal pursuant to section 512.020, RSMo Supp.2006. The Missouri Supreme Court in *State ex rel. R.L.W. v. Billings*, 451 S.W.2d 125 (Mo. banc 1970), considered the applicability of the Code of Civil Procedure to juvenile proceedings and concluded as follows:

> While it has been frequently held that the Juvenile Act is a complete law within itself dealing with minors under the age of seventeen years, it is obvious that the Act does not purport to set up its own procedures in all respects. For instance, while it provides for an appeal from judgments, orders or decrees entered by the Juvenile Court (Sec. 211.261), no provision is made for the procedure to be followed on appeal. When confronted with such lapses, the courts have tended to treat proceedings under the Juvenile Act in much the same manner as they have those special actions (Civil Rules 85 through 102, and certain other statutory actions) for which special procedures have been established suitable to their distinctive remedial purposes, but which were not intended to meet every procedural exigency. In such instances, the Rules of

> Civil Procedure (which have been made to govern special proceedings through Civil Rule 41.02) have been made applicable to such special action statutes where not inconsistent with or repugnant to them.

> Comparably, as the Juvenile Act does not prescribe the procedure to be followed on appeal, appeals from juvenile court judgments have been held to be governed by the provisions of the Code of Civil Procedure applicable to appellate review of civil actions.

*Id.* at 128 (citations omitted). We determine then that Tolbert may have standing pursuant to the Code of Civil Procedure to appeal the decision by the circuit court and review section 512.020 for its applicability. *See In the Interest of R.M.P.*, 811 S.W.2d 61 (Mo.App.1991), reaching the same conclusion. Both the southern and eastern districts of this court have held that grandparents denied the right to intervene in juvenile proceedings under section 211.177, RSMo 2000, have standing to appeal under section 512.020. *In re L.J.H.*, 67 S.W.3d 751 (Mo.App.2002), and *In the Interest of M.B.*, 91 S.W.3d 122 (Mo.App.2002). Section 512.020 states in relevant part:

> Any party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not prohibited by the constitution, nor clearly limited in special statutory proceedings, may take his appeal to a court having appellate jurisdiction from any: (1) Order granting a new trial; . . . or (5) Final judgment in the case or from any special order after final judgment in the cause. . . .

For Tolbert to have standing under section 512.020 then, he must be a party and be aggrieved by the decision of the circuit court.

In this case, Tolbert was summoned into court by the Juvenile Officer as the puta-

tive father of the twins. Since this court's decision in *Miller v. Russell*, 593 S.W.2d 598 (Mo.App.1979), it is well settled that, once the juvenile court has assumed jurisdiction over a child, it is an appropriate forum for the adjudication of the paternity of the child. *Id.* at 602. If, as here, Tolbert was summoned to court by the Juvenile Officer to adjudicate the paternity of the twins, he was certainly a party to the action. Prior to the court's determination of non-paternity, Tolbert enjoyed visitation with the twins and sought custody of the twins from the court. Even if not the natural father, Tolbert had contended he would be an appropriate placement for the twins. The circuit court heard evidence over two days on the propriety of this placement, determined that it was not in the best interests of the twins, and denied Tolbert's request. The court then dismissed Tolbert as a party to the action. Tolbert is aggrieved by the circuit court's disposition and that disposition is final as to Tolbert in all respects. As a party aggrieved by a final judgment of the circuit court, Tolbert has standing pursuant to section 512.020 to appeal from the circuit court's decision. The motion to dismiss the appeal for lack of standing on the part of Tolbert is denied.

■ In his appeal, Tolbert first complains the circuit court erred in ordering paternity testing. Tolbert's position is apparently that since he claimed paternity by attempting to file an affidavit of paternity, no further inquiry is required. Section 210.834, RSMo 2000, is dispositive of this point. That section provides, in pertinent part: "The court may, and upon the request of any party shall require the child, mother, alleged father, any presumed father who is a party to the action ... to submit to blood tests." *Id.* Tolbert is certainly an alleged father and claims to be a presumed father who we have concluded is a party to the action. The Juvenile Officer requested paternity testing be performed. Pursuant to section 210.834, the circuit court had no discretion but to order Tolbert to submit to blood tests to determine the paternity of the twins. The circuit court did not err when it ordered paternity testing.

Tolbert next complains the circuit court erred by dismissing him as a party after concluding he was not the father of the twins. Tolbert does the circuit court a disservice by contending he was dismissed as a party once the court determined he was not the father of the twins. The circuit court on its own, without the benefit of a written motion, and, apparently, in response to Tolbert's ore tenus plea on his own behalf, conducted an evidentiary hearing over a two day period to determine his suitability as a kinship care placement for these twins. Obviously, Tolbert is not kin to the children but claims a relationship to them perhaps best described as fictive kin. For our purposes we define kinship care as meaning care and protection of a juvenile by persons related by blood, marriage, or adoption or by non-related persons whose lives are so intermingled with the juvenile such that the relationship is similar to a family relationship. The circuit court found at the conclusion of the hearing that Tolbert was not an appropriate placement for the twins and only then dismissed him as a party. Tolbert was not dismissed from the case solely because he was not the biological father of the twins, and his complaint is without merit.

Tolbert next claims he was denied a trial on the original "seizure" of the twins. The court assumes that Tolbert means the taking of judicial custody of the boys by the Juvenile Officer, as soon as they were healthy enough to be released from the hospital. Here again Tolbert is mistaken. A protective custody hearing was conduct-

ed on May 3, 2005. At that hearing Tolbert requested the twins be placed with him pending the adjudication hearing. The circuit court decided to place the children with the children's division because of the mother's access to the children at Tolbert's home. Counsel was appointed for all parties, and a date was set for the adjudication hearing. Thereafter, on September 1, 2005, the circuit court convened the adjudication hearing. At that hearing the mother stipulated to the allegations of the petition, and Tolbert stipulated that paternity had not yet been established. The circuit court found that, based on the stipulations of the parties, the Juvenile Officer could and would prove the allegations of the petition, found the allegations in the petition true, and assumed jurisdiction over the twins. This hearing was Tolbert's opportunity to contest the exercise of jurisdiction over the twins. He failed to do so by stipulating to facts sufficient to give rise to the circuit court's exercise of jurisdiction over the children. Tolbert cannot now claim he was denied the opportunity to contest the circuit court's exercise of jurisdiction. This claim of err is belied by the record and denied.

██ Tolbert next claims the circuit court erred in its assessment of his knowledge of the drug issues involving the twins' mother and that the circuit court confused Tolbert with the putative father of the twins' older sibling. The court does not review individual allegations of error but reviews the *circuit court's decision* to determine if it is supported by the evidence.

██ Our review is the same for juvenile cases as it is for a court-tried civil case. *See In Interest of M.R.F.*, 907 S.W.2d 787, 789 (Mo.App.1995). We will sustain the judgment "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erro-

neously applies the law." *Id.* The facts and reasonable inferences are considered "in the light most favorable to the juvenile court's judgment." *Id.*

██ As has been previously stated, the circuit court heard evidence over a two-day period then made the following findings:

> This matter comes on pursuant to a request of Richard L. Tolbert to be granted leave to remain a party and be considered a kinship placement.
>
> Mr. Tolbert was named by the mother as the father and signed an Affidavit of Paternity. However, paternity testing concluded he is not the father of this child.
>
> This Court must decide whether it is in the best interest of the child for Mr. Tolbert to be granted party status.
>
> The Court has concerns that Mr. Tolbert does not grasp the serious and chronic nature of Ms. Joanna Smith's substance abuse problem. He has been involved with her for 5 years and was unaware that Ms. Smith frequently used on a daily basis and often on a twice-daily basis.
>
> Mr. Tolbert seems to believe that the 3 months Ms. Smith was clean during her pregnancy with the child and his twin sibling is of great significance. While it is certainly good, it is not indicative of overcoming her addiction. Ms. Smith was hospitalized during this time, so she was in a controlled environment. It is important to note that Ms. Smith resumed her chronic use upon discharge from the hospital. She is now incarcerated due to probation violations, sentenced to a 120–day call back. She may be released in early March.
>
> This Court believes that Ms. Joanna Smith has taken advantage of Mr. Tolbert and will continue to do so. It is obvious that Mr. Tolbert cares greatly

for Ms. Smith and this Court believes that this has and will cloud his judgment in regards to the child.

The Court concludes there is no legal basis and it is not in the best interest of this child for Mr. Tolbert to be granted party status. He is discharged from this case.

Each and every finding by the circuit court is amply supported by the record. Tolbert's own testimony made abundantly clear that he would not protect the children from their mother. He minimized the mother's drug dependency in the face of her own admission that the twins were without proper care, custody, and support due to her chemical dependency to cocaine. In an effort to put the best face possible on Tolbert's testimony, his own lawyer described him as a "cock-eyed optimist" for his insistence that the mother was recovering from her addiction. The circuit court was fully justified in finding that Tolbert would not subordinate his desire to make a family with the twins' mother to the protection of the children if they were entrusted to his care. Where, as here, the circuit court had previously assumed jurisdiction of the children and the court is deciding on a change of custody, the court has "great discretion" in determining the disposition of the children. *C.R.K. v. H.J.K.*, 672 S.W.2d 696, 699 (Mo.App. 1984); *see also In the Interest of K.L.B.*, 898 S.W.2d 696, 703 (Mo.App.1995). Here the findings and disposition of the circuit court are supported by substantial evidence, are consistent with the weight of the evidence, and must be affirmed.

█ Tolbert's final allegation of error is that the circuit court erred by allowing his appointed counsel to withdraw after he was discharged as a party but before he could perfect his appeal. Tolbert cites no authority in support of his position. It is apparently his position that, once counsel

has been appointed, counsel cannot thereafter be allowed to withdraw until every avenue of relief has been exhausted. Section 211.211, RSMo 2000, and Rule 116.01 control the right to counsel in juvenile proceedings, and both provide as follows:

> When a petition has been filed and the child's custodian appears before the court without counsel, the court shall appoint counsel for the custodian if it finds: (1) That the custodian is indigent; and (2) That the custodian desires the appointment of counsel; and (3) That a full and fair hearing requires appointment of counsel for the custodian ... Counsel shall serve for all stages of the proceedings, including appeal, unless relieved by the court for good cause shown. If no appeal is taken, services of counsel are terminated following the entry of an order of disposition.

In the case at bar, Tolbert was joined as a party to determine his paternity. He was never a custodian of either of the twins. The twins had been taken into protective custody as they were released from the hospital following their birth. Pursuant to section 211.211, Tolbert was entitled to be represented by counsel but was never entitled to appointed counsel. The circuit court exercised its discretion and appointed counsel for Tolbert as a putative father. Later, paternity testing eliminated Tolbert as the biological father of the twins. At the request of Tolbert, the circuit court conducted an evidentiary hearing to determine Tolbert's suitability as a kinship care provider. The circuit court concluded Tolbert was not a suitable placement for the twins, discharged Tolbert as a party, and allowed his counsel to withdraw. The issue then is did the circuit court have good cause to terminate appointed counsel for Tolbert. Once it was determined that Tolbert was not a parent, a custodian, or an appropriate placement

for the children, Tolbert was no longer an appropriate party to the proceedings and was discharged as such by the circuit court. The legislature has made clear who must be afforded appointed legal counsel, and Tolbert never was in that category. Even though the circuit court extended appointed counsel to Tolbert, it was under no obligation to continue to do so when the object of the appointment no longer existed. There was good cause to terminate Tolbert's appointed counsel when the circuit court concluded Tolbert was no longer an appropriate party, and Tolbert was not otherwise entitled to appointed counsel by statute or court rule. The circuit court did not err in allowing appointed counsel to withdraw.

Although Tolbert has standing to appeal in this case, the circuit court did not err in ordering paternity testing or in its discharge of Tolbert from the action after making its determination that Tolbert was not an appropriate placement for the twins. The record reflects that Tolbert had an opportunity to contest the court's jurisdiction over the twins but failed to do so and, instead, stipulated to facts sufficient to give rise to the circuit court's exercise of jurisdiction. The record amply supported the circuit court's findings and disposition. The circuit court did not err in allowing appointed counsel to withdraw after it concluded that Tolbert was no longer an appropriate party to the action.

All concur.